[L. A. No. 6329. Department Two.—July 1, 1920.]

In the Matter of the Estate of HARRY STREETON, Deceased. EMMA LOUISE SHOULTS, Appellant, v. NELLIE WILLIAMS, Administratrix, Respondent.

[1] ESTATES OF DECEASED PERSONS—SIGNING OF HOLOGRAPHIC WILL— TEST.—In determining whether a will has been signed by the hand of the testator himself, as required by section 1277 of the Civil Code, the fact that the signature, wherever placed, was intended as an executing signature must satisfactorily appear on the face of the document itself, and if placed elsewhere than at the end, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should there serve as a token of execution.

[2] ID.—HOLOGRAPHIC WILL—SIGNATURE AT BEGINNING OF DOCUMENT— SUFFICIENTLY AUTHENTICATED INSTRUMENT. — A document testamentary in character and entirely in the handwriting of the testator consisting of a single sheet of paper with the date written in the upper right-hand corner, and with the name of the testator appearing in the upper left-hand corner on a line with the date and above all other writing, and which contained creases indicat-

---

2. Necessity that signature of holographic will be at end, note, Ann. Cas. 1918B, 230.

ing that it had been crumpled and which was torn at the bottom in such a way as to disclose by pencil-marks and dots appearing along the torn edge that there were written words on the part torn off, is a sufficiently authenticated holographic will.

[3] ID.—DUE EXECUTION OF WILL—QUESTION OF FACT.—The due execution of a will is a question of fact, and its determination by the trial court is not to be overthrown unless that determination is without support in the evidence.

[4] ID. — PLEADING — INSUFFICIENT ALLEGATION OF REVOCATION OF WILL.—An allegation in a petition to revoke the probate of a will that said written instrument is not the last will and testament of the deceased is a mere conclusion of law and not a sufficient allegation of revocation. .

[5] ID.—GROUNDS OF CONTEST TO WILL—MANNER OF PLEADING.—In stating the grounds of contest to a will, if unsoundness of mind is relied on, it is sufficient to state that the deceased, at the time of the alleged execution of the proposed paper was not of sound and disposing mind, and the same is true as to undue execution, but when the grounds embrace fraud, duress, or undue influence, a subsequent will, revocation, or the like, such matters, not being ultimate facts, but conclusions of law to be drawn from facts, must be pleaded, not in the language of the statute, but the facts relied on must be stated.

[6] ID. — REVOCATION OF WILL — EVIDENCE. — There must be an act coupled with an intent in order to revoke a will. If the act is a slight one, the evidence of intent must be clear; if, on the other hand, the act is sufficiently definite in character, the intent may be presumed from the very nature of the act and surrounding circumstances.

[7] ID.—PARTIAL MUTILATION—INSUFFICIENT EVIDENCE OF INTENT TO REVOKE.—In the absence of evidence *aliunde,* an intent to revoke a whole will cannot be inferred from a partial mutilation which does not affect the instrument as an entirety, or destroy that part which gives effect to the whole.

[8] ID.—DESTRUCTION OF SIGNATURE—EFFECT OF.—While the fact that a will is found with the signature destroyed may be sufficient to support a presumption of an intention to revoke the whole will, the presumption may be repelled by a showing that the signature had later been restored or rewritten.

[9] ID.—INTENTION TO REVOKE WILL—INSUFFICIENCY OF EVIDENCE.—An intention to revoke a holographic will, wherein the signature of the testator appeared at the top of the document disconnected with any other written matter, is not to be presumed from

3. Partial revocation of will, note, Ann. Cas. 1913D, 313.

its crumpled and torn condition, in the absence of evidence that it had been continually under the control of the testator until the time of his death.

APPEAL from an order of the Superior Court of Los Angeles County denying revocation of probate of will. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert M. Clarke and Henry L. Knoop for Appellant.

I. R. Rubin and M. G. C. Harris for Respondent.

LENNON, J.—The superior court of Los Angeles County denied a petition for the revocation of an order which admitted to probate a certain written instrument, holographic in form, as the last will and testament of Harry Streeton, deceased. Petitioner appeals. The respondent herein is the administratrix with the will annexed. The petitioner, an heir at law of said decedent, sought to have the probate of the will revoked, apparently upon three grounds: (1) That the instrument was not executed as required by law; (2) that the will had been revoked; (3) that the decedent was not of sound mind at the time the instrument was executed. In view of substantial conflict in the evidence, the sufficiency of the evidence to support the findings of the trial court upon the question of mental competence is not challenged, and petitioner, upon this appeal, relies entirely upon the first two grounds.

After the death of Harry Streeton the instrument in question, which consists of a single sheet of paper, was found in an envelope. At the time it was found, the lower portion of the page had been torn off in such a way as to disclose, by "pencil-marks and dots" appearing along the torn edge of the paper, that there were written words on the part torn off. There were creases in the paper indicating that it had been crumpled. The document is entirely in the handwriting of decedent; the date is written in the upper right-hand corner of the page and, in the upper left-hand corner, on a line with the date and above all the other writing, appears the name of decedent.

The condition of the will is best portrayed by a photographic reproduction thereof, which appears in the record, and is, therefore, reproduced in this opinion as follows:

The alleged defect in the execution of the will is the
claimed insufficiency of the signature as a token of authen-
ticity. [1] The test to be applied in determining whether
a will has been "signed by the hand of the testator himself,"
as required by section 1277 of the Civil Code, was stated in
*Estate of Manchester*, 174 Cal. 417, [163 Pac. 358, Ann. Cas.
1918B, 227, L. R. A. 1917D, 629], as follows: "The true
rule, as we conceive it to be, is that, wherever placed, the
fact that it was intended as an executing signature must
satisfactorily appear on the face of the document itself. If
it is at the end of the document, the universal custom of
mankind forces the conclusion that it was appended as an
execution, if nothing to the contrary appears. If placed
elsewhere, it is for the court to say, from an inspection of
the whole document, its language as well as its form, and the
relative position of its parts, whether or not there is a posi-
tive and satisfactory inference from the document itself that
the signature was so placed with the intent that it should
there serve as a token of execution. If such inference thus
appears, the execution may be considered as proven by such
signature." Applying this test in the present case, we find
no language in the document which adopts the name as a
signature for the purpose of execution. Reference to the
name as a signature is not essential, however, if the form
of the document is such that the relative position of its parts
alone gives rise to a positive inference that the name was
affixed for the purpose of execution. In the document now
under consideration, there is no space at the end of the
writing in which a signature could have been placed. The
name of the testator appears in a blank space, disconnected
from the rest of the written matter both as to location and
meaning. Had the name appeared in the exordium, the
logical inference from the context would probably have been
that it was intended merely to identify the person making
the will, and additional facts might have been necessary to
raise the inference that it was also intended as a signature
in execution of the will. (*Estate of Hurley*, 178 Cal. 713,
[174 Pac. 669]; *Estate of McMahon*, 174 Cal. 423, [L. R. A.
1917D, 778, 163 Pac. 669].) But, as above stated, the name
of decedent appears entirely separate from the rest of the
writing and by itself. [2] It must be assumed that it was
placed on the document for some purpose, and the only
apparent and reasonable purpose under the circumstances

would seem to be the signing of the instrument with the intention of authenticating the same. This conclusion becomes the more compelling when we consider that the name is written in a blank space at the *beginning* of the instrument, for such a space is the most natural one in which to place a signature when the usual place at the end of the document is unavailable. The fact that the end of the page was torn off, whatever its importance in a determination of the question of revocation, if of any weight in a consideration of the sufficiency of the signature, tends to support, rather than defeat, the inference that the name was written at the top of the page with the intention of authenticating the instrument. [3] The due execution of a will is a question of fact, and its determination by the trial court is not to be overthrown unless that determination is without support in the evidence. (*Estate of Cullberg,* 169 Cal. 365, 370, [146 Pac. 888].) We are satisfied that the finding of the trial court to the effect that the testator signed his name at the top of the will with the intention of authenticating the instrument was sustained by a "positive and satisfactory inference" arising from the face of the document itself.   ·

The petition to revoke the probate of the will contains no direct allegation of the revocation of the will by the testator. The allegation "that said written instrument is not the last will and testament of said Harry Streeton, deceased," was evidently intended as an allegation of revocation. [4] Such an allegation is a mere conclusion of law and, therefore, insufficient. [5] "In stating the grounds of contest, if unsoundness of mind is relied on, it is sufficient to state that the deceased, at the time of the alleged execution of the proposed paper, was not of sound and disposing mind. And the same is true as to undue execution. But when the grounds of contest embrace fraud, duress, or undue influence, a subsequent will, revocation, or the like, such matters, not being ultimate facts, but conclusions of law to be drawn from facts, must be pleaded, not in the language of the statute, but the facts relied on must be stated." (40 Cyc. 1269; *Estate of Gharky,* 57 Cal. 274, 279; *Estate of Harris,* 3 Cof. Prob. 1; *Barksdale* v. *Davis,* 114 Ala. 623, [22 South. 17].) However that may be, no demurrer was interposed, and, inasmuch as the question of revocation was apparently a contested issue in the court below, we shall consider the point upon its merits.

With reference to the question of revocation there was the following testimony of respondent concerning the condition in which the will was found:

"Q. It appears from the pencil-marks and dots along the tear that there was other writing upon this paper. Can you give us any light on that, or do you know anything about it?

"A. I don't know anything about it. I got it after he died. I opened the envelope and that was the condition of the will.

"Q. With reference to the crumpled condition, is that the condition that it was?

"A. That is the condition—I suppose laying around. I have no other reason—I don't know why."

No other evidence was adduced. Petitioner, however, claims to have thereby borne the burden of proving a revocation. In this behalf petitioner relies upon the statement in *Estate of Olmsted,* 122 Cal. 224, 230, [54 Pac. 745], to the effect that, where it appeared that an instrument during the lifetime of the maker had been in his secure possession and, when discovered by the two parties in interest, bore marks of cancellation, "From these circumstances alone arise the presumptions: 1. That the cancellations were the act of the testator; and 2. That they were performed with the intent and purpose of revoking the instrument." The facts of that case are, however, distinguishable from the facts now presented. In the case at bar there was, apparently, no proof that the will had been continually under the control of the testator until the time of his death; moreover, the acts from which it is claimed the intent to revoke is presumed are of a different character from the acts proved in the *Estate of Olmsted.* In that case it was also said: "What act of destruction will supply the requirement of the statute is a question much discussed. It is apparent that the destruction may be total or partial. The will, for example, may be wholly burned or totally obliterated, or it may be but partially destroyed, and still legible. Generally, it may be said that, *if the intent to revoke clearly appears, a slight act within the statute will be deemed sufficient."* (Italics are ours.) **[6]** In other words, there must be an act coupled with an intent. If the act is a slight one, the evidence of intent must be clear; if, on the other hand, the act is sufficiently definite in character, the intent may be presumed from the very nature of the act and the surrounding circum-

stances. While the crumpling of the instrument in the instant case might be a sufficient act of destruction if it were accompanied by clear evidence of other circumstances showing, or tending to show, an intent to revoke, the mere act of crumpling in and of itself is insufficient to support a presumption of an intention to revoke.

Nor does the fact that a portion of the will as originally drafted was torn from the remaining text raise any presumption of an intention to revoke the whole instrument. "The slightest act of tearing with intent to revoke the whole will is sufficient for the purpose. But the whole will is not necessarily revoked by the destruction of a part. It is the *animus* which must govern the extent and measure of operation to be attributed to the act, and determine whether the act shall effect the revocation of the whole instrument, or only of some, and what portion thereof. It is obvious that the mutilation may be of such a part as to afford evidence that the deceased did not intend the document any longer to operate as his will. [7]· On the other hand, in the absence of evidence *aliunde* an intent to revoke the whole will cannot be inferred from a partial mutilation which does not affect the instrument as an entirety, or destroy that part which gives effect to the whole." (40 Cyc. 1191.) [8] The fact that a will is found with the signature destroyed may be sufficient to support a presumption of an intention to revoke the whole will. (*King* v. *Ponton,* 82 Cal. 420, [22 Pac. 1087].) While this act imports *prima facie* an intent to revoke, it is, nevertheless, a presumption which may be repelled by accompanying circumstances. Therefore, if a signature has been destroyed but later restored or rewritten, the courts in general admit the will to probate, for it then appears affirmatively that there was no intent to revoke. (*In re Wood,* 32 N. Y. St. Rep. 286, [11 N. Y. Supp. 157]; *Sellards* v. *Kirby,* 82 Kan. 291, [136 Am. St. Rep. 110, 20 Ann. Cas. 214, 28 L. R. A. (N. S.) 270, 108 Pac. 73]; *In re Brock,* 247 Pa. 365, [L. R. A. 1915D, 1140, 93 Atl. 487].) Even assuming then, in the present case, that the testator tore his signature from the will, any presumption therefrom of an intent to revoke is repelled by the fact that his signature was again appended to and appeared on the will when it was found after his death, obviously placed there for the purpose of authentication and execution.

The document was carefully torn so as to leave the portion found in the envelope intact and complete in itself. The torn edge is practically horizontal, with the exception of the lower left-hand corner, where the horizontal line is departed from so as to preserve two syllables of a word divided at the end of the preceding line. The mutilation is a partial one "which does not affect the instrument as an entirety, or destroy that part which gives effect to the whole."

[9] After a careful examination of the photographic copy of the document, we are convinced that the marks of crumpling and tearing which it bears are, in the absence of additional evidence, insufficient to support a presumption of an intention on the part of the testator to revoke the whole will.

The order is affirmed.

Wilbur, J., and Sloane, J., concurred.