[S. F. No. 11784.   In Bank.—June 17, 1926.]

In the Matter of the Estate of JOSEPH DEVLIN, Deceased. PETER DEVLIN, Appellant, v. KATIE O'REILLY, Executrix, etc., Respondent.

[1] ESTATES OF DECEASED PERSONS — HOLOGRAPHIC WILL — INSUFFICIENT SIGNING.—An instrument purporting to be a will, which is entirely in the handwriting of the decedent, but is not signed, contains the name of the decedent in the exordium only, and ends without period or other mark, is insufficient as a holographic will, as it is not sufficiently signed and appears to be uncompleted.

---

1.   See 26 Cal. Jur. 865; 28 R. C. L. 163.

[2] ID.—HOLOGRAPHIC WILL—ESSENTIALS.—Under section 1277 of the Civil Code a holographic will must be entirely written, dated, and signed by the hand of the testator.

(1) 40 Cyc., p. 1129, n. 7, 8, p. 1130, n. 9.   (2) 40 Cyc., p. 1129, n. 5.

APPEAL from an order of the Superior Court of the City and County of San Francisco, admitting to probate a document purporting to be a will. Thomas F. Graham, Judge. Reversed.

The facts are stated in the opinion of the court.

C. L. McEnerney and A. L. O'Grady for Appellant.

John L. Murphy and James A. Himmel for Respondent.

NOURSE, J., *pro tem.*—This is an appeal from an order admitting to probate a certain document purporting to be the last will of Joseph Devlin, deceased, and granting letters testamentary to Katie O'Reilly. The document which was admitted to probate was entirely written by the deceased and reads, in part, as follows: "San Francisco, August 15th, 1921—I Joseph Devlin have lived at 229 Ellsworth St. San Francisco, Cal at the above date I am the owner of this will as it was myself who write it up I will appoint my cousin Mrs. James O.Reilly as my respective Trustee. \*\*\* Dear Katie first of all it is my wish that you take charge of my funeral and see that I will be buried respectfully in every way.\*\*\* there is another request I wish to ask of you \*\*\* it is my wish and request that you will pay \*\*\* the sum of $500.00 \*\*\* for Masses \*\*\* You will find in this Will two separate letters \*\*\* You will read those two letters carefully and then you will know how I wish those Masses said. \*\*\* I bequeath to my sister Isabella Devlin in Ireland $500.00 also to my Brother Mark Devlin (and other special bequests making a total of $1500.00) \*\*\* I hope I will be able to leave you a little present for your trouble\*\*\*.

"Dear Katie I have about $2600.00 Dollars in two different banks \*\*\* besides other papers \*\*\* and last Dear

2. Requisites of holographic will, note, 104 Am. St. Rep. 22. See, also, 28 R. C. L. 161; 26 Cal. Jur. 854.

Katie the money in Banks and on hand will about pay all expenses then the little place where I lived is worth about 12 or 1400.00 Dollars when you sell it I bequeath $500.00 Dollars out of it as a little token of friendship to you I will state to you later what I would wish you to do with the balance I have some other little interests besides I am tired writing Goodnight" (End of document but without period or other mark.) This document was found after the death of the deceased inclosed in an envelope upon the face of which was written entirely in the hand of the deceased the following: "This Envolope Contains the Late Joseph Devlin's Will Please Deliver This Will to Mrs. James O'Reilly 558-25 Ave Richmond Dist. San Francisco."

[1] The appellant, who is a brother and heir of the deceased, filed written grounds of opposition to the probate of the purported will and prosecutes this appeal from the order admitting it to probate. The basis of the attack upon the order is that the will was not signed by the deceased and that it does not therefore meet the demands of section 1277 of the Civil Code, that "An olographic will is one that is entirely written, dated and *signed* by the hand of the testator himself." In support of the appeal the appellant relies upon *Estate of Manchester*, 174 Cal. 417 [Ann. Cas. 1918B, 227, L. R. A. 1917D, 629, 163 Pac. 358], *Estate of Hurley*, 178 Cal. 713 [174 Pac. 669], *Estate of Streeton*, 183 Cal. 284 [191 Pac. 16], and *Estate of Bernard*, 197 Cal. 36 [239 Pac. 404]. In reply the respondent insists that under the rule of the *Estate of McMahon*, 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669], the court must hold in this case that the use of the expression "I am the owner of this will as it was myself that wrote it up" was an adoption by the deceased of the precedent name as his executing signature. In the *Estate of Manchester, supra*, the document offered for probate began as follows: "January 14, 1914. I, Matilda Manchester leave & bequeath all my estate & effects, after payment of legal, funeral & certain foreign shipment expenses (as directed) to the following legatees ***." Then followed a statement of devises and bequests to divers persons. It ended as follows: "Whereunto I hereby set my hand this fourteenth day of January, 1914." The document was folded and inclosed in an envelope which was indorsed by the testator as follows: "My will, Ida Matilda

Manchester." In reversing the order admitting the purported will to probate this court held that "It was not signed according to the meaning of that word in ordinary usage. To sign, as applied to a document, is defined as follows: 'To affix a signature thereto; to ratify by hand or seal; to subscribe in one's own handwriting.' (Webster's Dictionary.) Unquestionably, as used in the above-quoted section, it means the signature of the testator in his own handwriting written somewhere in or upon the document, with the intention by so writing it to authenticate the document. The name written at another place than the end of the document, and not for the purpose of authenticating it and indicating its completion, but merely to identify the person who is making the will, cannot be deemed to be a name 'signed' to the document, unless that word is given a meaning entirely different from that which it is generally understood to have." Again, in the same case (page 421), the court said: "The true rule, as we conceive it to be, is that, wherever placed, the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself. If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears."

In the *Estate of Hurley, supra,* this court, in reversing an order refusing to revoke a previous order admitting a purported holographic will to probate, quoted with approval the language last quoted from the Manchester case. In the Hurley case the document opened with the following words: "San Francisco, June 6th, 1902—I Margarent E. Hurley, being of sound mind and body do make this my last will and testament." A number of bequests followed and the document ended "to Mrs. Skelly of Alameda five hundred dollars to Lilian and Bertha Morris five hundred each." In holding that the document was not a valid holographic will the court said (page 715): "In the present case the signature appears in the opening statement of the paper, but there is nothing in the document or in the closing paragraph to indicate that the testatrix intended to adopt that signature as the executing signature of the will. Indeed, the contrary may be inferred from the fact that the will terminates without even a punctuation mark, thereby indicating that the testatrix ceased writing before she had completed declaring her inten-

tion and that she did not regard the document as a completed will. But the contrary inference need not appear. In the absence of anything on the face of the will to raise the inference that the name in the exordium was intended as a signature in execution, the holographic document cannot be deemed a valid will.''

In *Estate of Streeton, supra,* the document offered for probate had in the upper left-hand corner the name ''Harry Streeton,'' then followed ''Los Angeles, May 3, 1918, My last request if I should pass away in this sickness that everything that belongs to me and is under my name will be given to Mrs. Nellie Williams ***.'' The will was admitted to probate, and in affirming an order denying a revocation of the will this court reaffirmed the rule in the Manchester and Hurley cases and held ''In the document now under consideration, there is no space at the end of the writing in which a signature could have been placed. The name of the testator appears in a blank space, disconnected from the rest of the written matter both as to location and meaning. Had the name appeared in the exordium, the logical inference from the context would probably have been that it was intended merely to identify the person making the will, and additional facts might have been necessary to raise the inference that it was also intended as a signature in execution of the will. (*Estate of Hurley,* 178 Cal. 713 [174 Pac. 669]; *Estate of McMahon,* 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669.) But, as above stated, the name of decedent appears entirely separate from the rest of the writing and by itself. It must be assumed that it was placed on the document for some purpose, and the only apparent and reasonable purpose under the circumstances would seem to be the signing of the instrument with the intention of authenticating the same. This conclusion becomes the more compelling when we consider that the name is written in a blank space at the beginning of the instrument, for such a space is the most natural one in which to place a signature when the usual place at the end of the document is unavailable. The fact that the end of the page was torn off, whatever its importance in a determination of the question of revocation, if any weight in a consideration of the sufficiency of the signature, tends to support, rather than defeat, the

inference that the name was written at the top of the page with the intention of authenticating the instrument.''

In the *Estate of Bernard, supra,* the document offered for probate read, in part, as follows: ''The following 4 sheets of paper included, Long Beach, California, Oct. 12, 1918. I, Josephine Bernard of the City and County of Denver, Colo. do hereby declare this to be my last will and testament.'' The document terminated near the middle of the last page ''To her husband Herbert Donahue ruby and diamond stick pin.'' In affirming an order revoking probate of the alleged will the court analyzed and approved all the cases heretofore referred to, together with the *Estate of McMahon,* 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669]. The following language appearing in that decision is particularly appropriate (page 334): ''The signature of the decedent appears only in the exordium, and there is nothing in any other part of the alleged will to indicate affirmatively or by necessary implication that the signature was intended to be or was adopted as the final executing signature in authentication of or in execution of the document as a completed testamentary act. The obvious and natural inference to be drawn from the position of the name of the decedent in the alleged will is that it was intended merely as *descriptio personae,* and, in the absence of anything affirmatively appearing on the face of the will itself tending to show that such signature was intended to authenticate it, this conclusion is inevitable.''

We have referred to the language of the dicisions relating to the appearance of the name of the decedent in the exordium alone, but *Estate of Hurley* and *Estate of Bernard* are both applicable here for the additional reason that the documents offered for probate in each of those cases appeared to have been uncompleted, as is the case with the document here under consideration. Commenting on this circumstance the court in the *Estate of Bernard (supra),* said: ''The abrupt termination of the document near the middle of the last page is a strong indication of decedent's intent to do something more in order to make it a complete will. The last clause being, in all general respects, similar to the preceding dispositive clauses, manifests that the writer did not intend to terminate the document finally and definitely at that particular point, but, rather, indicates that something addi-

tional was to be done and necessarily compels the conclusion that decedent had no intention of adopting the name written in the opening clause of the will as the executing signature to her final testamentary act.''

In support of the order the respondent relies upon *Estate of McMahon,* 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669], where the purported will read, in part: ''This is the last will and testament of Elizabeth R. McMahon.'' Then followed certain specific bequests and devises, concluding with ''I do hereby publish and declare the foregoing, entirely written, dated and *signed* by my own hand, to be my last will and testament, this second day of January, 1912.'' (Emphasis ours.) No signature followed this declaration and no signature appeared in any other place upon the document than in the opening clause. The document was admitted to probate as a holographic will and this order was, on appeal, affirmed on the ground that the declaration of the testatrix that she had signed the document by her own hand was an adoption by her of her signature as written in the body of the will as her signature in execution of it. The McMahon case has been cited and followed in the later cases which we have just referred to, but the court has been particular to point out that the case rested upon the peculiar language of the will, from which it was inferred that the name in the exordium was adopted as the executing signature of the testatrix. The language of the McMahon will was materially different from that under consideration in the case before us. There the writer expressly declared that the *foregoing* will was signed by her. This was in effect a declaration that she had signed the will when she inscribed her name in the opening clause and that she then adopted that signature as the executing signature to the will. Here the deceased merely stated in the opening clause that he *wrote* the will and that he was the owner of it. Now, the writing of the will and the signing of it are two different things.

[2]   Section 1277 of the Civil Code, requires that a holographic will must be entirely written, dated, and signed by the hand of the testator. There are three things, therefore, which must be done by the testator to constitute a holographic will within the section. If he has merely written it in his own hand and has failed to date or sign it, it is not a valid holographic will, and from the declaration that he

has written it in his own hand there is nothing from which the inference can be drawn that he has signed it or that he has intended to adopt as his executing signature the name which he has inserted in the exordium.

Order reversed.

Shenk, J., Curtis, J., Richards, J., Seawell, J., and Waste, C. J., concurred.