In re McNAIR'S ESTATE

FARRINGTON, et al., Appellants, v. LONGSTAFF, et al., Respondents

(38 N. W.2d 449.)

(File No. 9004.  Opinion filed June 17, 1949)

(Rehearing Denied July 19, 1949)

**Chas. R. Hatch,** Wessington Springs, **Armstrong & Spector,** Phoenix, Arizona, for Appellants.

**Churchill & Churchill, Royhl & Benson,** Huron, for Respondents.

HAYES, J.   The sole question submitted by the appeal in this proceeding is whether a writing testimentary in character was executed or signed by the author as is required by SDC 56.0209 relating to the form of an olographic will. No other ground of opposition to the probate of said writing is raised or argued here.   By stipulation of counsel appearing in the record it is agreed that all of the writing upon the instrument presented as the will of Ella McNair, with the exception of filing and identification marks placed thereon by court officials, is by the hand of said person.   The county and circuit courts each decided that such written instrument bore the author's signature and that the same should be admitted to probate.   The contestants, plaintiffs at the trial de novo in circuit court, appeal from the judgment of that court overruling the ground of opposition to probate upon which they relied and determining that the writing is legally sufficient to constitute the author's will.

· In lieu of an attempt to accurately describe the instrument before us a photographic copy thereof is here set forth.

*Exhibit A*
*July 1 1946*
*E. St*

August 9, 1944

I, Ella McNair of Wessington So. Dak., do hereby make my last will.

I. I give, devise and bequeath to Wessington Springs College located in Wessington Springs So. Dak, the Olenier hotel located in Wessington Springs, So. Dak

II. I give, devise and bequeath to Harley Sutton lots 15 & 16 Block 20, Brooks addition to Wessington, So. Dak

III. I give, devise and bequeath to the Community Church of Wessington, So. Dak the lots 8-9-10-11-12 Block 9 of Brooks addition to Wessington, So. Dak and lots 14-15-16 Block 9 Brooks addition to Wessington, So. Dak

IV. I give devise and bequeath unto Ora Parker N 86 ft - 1-2-3-4-5 Block 12. Wessington So. Dak

V. I give devise and bequeath to Harrie Hutchinson the two houses situated in Block 12 known as the Birnie house and the Lamb house, Wessington, So. Dak

#2— Will of Ella McNair I L. Exhibit A1 July 6 1946. E St.

VI I give, divise and bequeath to Mrs Hattie Place the little house in Block 2 Wilmington So, Dak which she occupies

VII I give, divise and bequeath unto Mrs Louise Stiner $200.00 and unto the Community Church $200.00.

VIII I give divise. and bequeath unto Jessie Myers of Portland, Oregon $100.00,

IX I give divise and bequeath unto Medeed Hutchinson my mink cape and the furniture which she has borrowed from me and title

X. I give, divise and bequeath unto Frank Murphy the w ½ of 4 and W ½ 4-109--66 which he now leased

XI I give, divise and bequeath unto George E. Longstaff the S E 3 110-66, the S W 2 110-66 Hand Co. and S W 7-111-65 Beadle,

XII I give, divise and bequeath unto Cora Tullis lots 11 & 12 Block 2 — Wilmington, S D

XII I give divise and bequeath to the Rescue Mission of Huron, S D of which Mr Ripp is the head $200.00

XIII I give, divise and bequeath unto George E. Longstaff in gratitude for sympathy & kindness extended to me all of 28-110-65

286

608

Exhibit A 2
July 1946.
E. H.

T-C  Will of Edw. McNair

XIV  I give, devise and bequeath unto George E. Longstaff (not Royl & Longstaff) as trustees and in trust the following properties and all the rest and remainder thereof. The trustee is to hold the same, pay taxes and repairs thereon and pay to Cecil Richardson $1000 each year from the net proceeds and to hold the remainder in trust for ten years when it may be paid to said Cecil Richardson, if he is living and if not, it may be turned to Huron College to found a scholarship fund for needy worthy ambitious students. This to be known as the J.D. McNair scholarship fund.

Lots 13 & 14 Block 2 - Stewards add to Wennington
Lot 12 - Block 2 - Wennington - W
Lot 6 Block 22 Wennington
Lot 5 Block 1 - Scotchtroop add Wennington
Lots 5 & 6 Block 3 - Wennington -
N 16 ft - Lot 10 Block 3 Wennington
Lots 5 & 6 Block 23 Wennington
~~Lots 7 - 8 - 9 Block 23~~
The story and a half small house on the west end of 15 - 16 - 17 Block 2 - Wennington
N ½ - 3 - 109 - 66 · Hand County
S E 25 - 110 - 66  Hand County  (over)  287

Lots 13 & 14 Block 98 Huron, W½ of N.E.¼ ¼ 7 & 8 Range 2
A.E. ¼ & N ½ 34 — 111 — 66 — Hand Co., various
M.E. 19 — 111 — 66   Hand Co. — N.W. & S.W. 7 — 111 — 65
Beadle
N.E. ¼ & E ½ of N.W. 10 — 110 — 66
S.E. 32 — 112 — 66
N.E. 5 — 111 — 66 } Hand County —
N.W. ¼ — 11 — 110 — 66   Hand Co.
all notes (Frank Daugherty, Wayne Grinnell,
Chester Daw, Jas & Tom McGuire, Jack McGuire
Leo McNerney, Alfred Sutton, Bill Sutton, and all other
notes) Also Bonds, Bank deposits, U.S. Postal
Savings, from the sale of lands or the
collection of notes. The balance of the
Omaha mortgage is to be paid in full.
I give, devise and bequeath unto Cecil
Richardson, my home — lots 7 — 8 — 9 Block
23 — Harrington and all the contents thereof,

COUNTY COURT,
Beadle County, South Dakota
**FILED**
Date April 19, 19 46
Margaret _____, Clerk
By _____, Deputy

It is observed that the same consists of three sheets of ruled
tablet paper. The reverse side of sheet No. 3 carries what
is written after the word "over" in parentheses appearing
on said sheet. The handwriting thereon is all in ink and
bears the appearance common to instruments prepared with
a pen dipped in ink rather than with a self-feeding or fount-
ain pen, some parts of the writing, as is manifest from the

copy, carrying considerably more ink than was employed elsewhere thereon. The uniform coloring of the ink used, the character of the handwriting and the similarity of the pen markings all tend strongly to indicate that the instrument was written at a single sitting. Nothing appearing therefrom suggests otherwise.

Ella McNair died at a Huron hospital March 21, 1946. Her husband, James D. McNair, predeceased her about ten years. She left no children surviving. As appears from the writing she owned considerable property at the time of her death. The record discloses that Cecil Richardson, the person for whom payments from trust income were provided and the individual last named in the writing, was her nephew and resided with her at Wessington for a period of some years prior to his death just two weeks before Mrs. McNair's passing. No other heir or relative is named as a beneficiary in the document in question. This instrument was taken by Mrs. McNair to the hospital. The same was kept in a small satchel and remained in her possession until her death. Thereafter it was removed from the satchel and from an envelope in which it was enclosed. The envelope bears the inscription "Will of Ella McNair". Part of such inscription is underscored. It is agreed also that the inscription on the envelope is in the handwriting of Mrs. McNair.

■ Over objections interposed by respondents at the trial proceeding the court heard testimony to the effect that the writing above described was by Mrs. McNair not regarded as her will and that she had made declarations before and after going to the hospital in last illness indicating an intention on her part to make dispositions of her property other than as in said writing set forth. Other evidence is to the contrary effect. It is a reasonable inference from the fact of the death of the nephew named in the writing that Mrs. McNair gave some thought to making other disposition of the property she had therein set apart to him. We are not in this proceeding, however, called upon to determine the admissibility of the testimony of witnesses tending to prove that declarations of the author of the writing negatived what otherwise appeared from the face of the

writing to be an execution or signing thereof. As first stated above, the only question before us is whether the writing of testamentary character dated August 9, 1944, is, as was decided by the trial court, signed by Mrs. McNair and therefore her will. This court has heretofore applied the rule that the only evidence that will warrant the conclusion that a holographic will is a complete and executed document must be found in and on the instrument itself. In re Brandow's Estate, 59 S. D. 364, 240 N. W. 323, 324.

Able briefs of counsel have aided us in deciding, for the first time in this court, whether an instrument of the character as above appearing and described, whereon the name of the author is written by him at a place or places other than at the end thereof, is a signed and completed document. This question has been the subject of much study elsewhere as is to be subsequently noted. It has been frequently treated in the decisions of the courts of California, perhaps much oftener than by the courts of any other jurisdiction. The authorities cited by counsel and others thought to shed light upon the problem have been reviewed.

■ Our statute, SDC 56.0209, is as follows: "An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

Every will, other than a nuncupative will, must be in writing, and every will, other than an olographic will and a nuncupative will, must be subscribed at the end thereof either by the testator or by some person acting at his direction. SDC 56.0210. The manner of executing the different forms of wills required by the laws of this state to be in writing is readily apparent: the one form, an olographic will, need but be signed; the other form, an attested will, "must be subscribed at the end thereof."

Appellants contend that this document should not have been admitted to probate as a will for the reason that no proof was offered by respondents establishing on the part of Mrs. McNair an intention to authenticate the same and for the further reason that the instrument is not sufficiently

complete to indicate a signing thereof when she wrote her name thereon. They urge the position that the name of Ella McNair as thereon appearing was but to identify the author and that the document is in the nature of an unfinished memorandum or list.

█ In a former opinion of this court, In re Brandow's Estate, supra, with reference to the place of a signiture on an olographic will, it is written: "Her name appears at the end of the instrument. * * * It is not material where the name of the testator appears in a will of this character. If it can be gathered from an inspection of the whole instrument that it is intended as a last will and testament, the statute is satisfied." The name of the maker of the Brandow will appearing at the end thereof, appellant's counsel assert that part or all of the two sentences last quoted is dictum and therefore offers no true guide in the case now before us. Should we concede the premise of this assertion, which we decline, we disagree with the conclusion thereof and we affirm the rules of law as declared in that opinion. Cf. 68 C. J., Wills, § 404; 57 Am. Jur., Wills § § 647 & 876. Cases examined by us and not cited in the Brandow opinion are referred to and cited in footnotes and annotations following the statements of the rule by Corpus Juris and American Jurisprudence in the respective sections thereof numbered as above.

The early English case of Lemayne v. Stanley, (1681), 3 Lev. 1, holding that an olographic will may be signed at the top, bottom or margin, is the subject of special consideration in a preparation found in 29 Mich. Law Rev. 685. Many of the decisions of the courts of other jurisdictions, antedating the opinion of this court in Brandow's Estate, supra, are therein reviewed, compared and distinguished. Our study of the many cases prior and subsequent to said opinion satisfies us that an attempt to rationalize the recorded views of other courts would likely result in a fruitless endeavor. We assume no such undertaking. Deducible from our reading is that a number of somewhat common factors tended to influence the announced determinations respecting instruments, in the nature of testamentary dispositions, not

subscribed at the end thereof. These include the time and place of the writing, the mental capacity or physical condition of the author, the place upon the instrument where the name of the maker is written, the inscriptions preceding or following the written name, the phraseology of the writing, how long it existed and where it was kept, the presence or absence of witnesses' names on the writing and whether or not it purported to be a more or less complete disposition of the author's holdings. Also, and of course of prime importance, are the specific provisions of the statutory law of each jurisdiction prescribing the essential features and form of an olographic will. As observed above, our statute requires not a subscription but a signing thereof.

■ Much of appellants' argument is directed against a holding that the name of the author written only in the exordium clause as hereinabove shown is a sufficient signing. They reason, and with a number of decisions supporting their views, that the name as there appearing is inserted but to identify the writer of the instrument and not with an evident intent to execute and authenticate the same. Should the features of the document now under consideration restrict us to such a solitary or single appearance of the name "Ella McNair" we would then be forced to a decision either for or against the early English case of Lemayne v. Stanley, supra, as has been the lot of courts of other jurisdictions. Here, however, the name of the author is written also at the top of each of the separate sheets. The hand of the writer departed from the form or context as otherwise and previously appearing in the writing when her name was placed at the top of the third and last sheet. She there wrote: "Will, Ella McNair" or "Will. Ella McNair". Whether a comma or a period is the chosen punctuation in this inscription is not possible of ascertainment by a comparison of the mark found here with like punctuations as elsewhere inserted in the writing. Regardless of the punctuation, we think it noteworthy and signficant of Mrs. McNair's intention to authenticate the instrument as her will when she wrote where she did, in effect if not in fact, "This is my will. Ella McNair". We are satisfied that the inscrip-

tions of her name at the top of the last sheet of this writing and elswhere thereon as above noted was a signing of the same by Mrs. McNair altogether sufficient under SDC 56.0209.

Whether the document in question is sufficiently complete to sustain the view that it was signed as a finished preparation must be determined from the face of the instrument. In the last paragraph of her writing, in addition to the final sentence thereof leaving the home and its contents to Cecil Richardson, Mrs. McNair plainly sought to declare and create a trust of "the following properties and all the rest and remainder thereof". The legal construction to be placed upon this quoted phrase and others appearing in the closing paragraph is not now before us for determination. Taking into account the general appearance of the writing, the language and phraseology employed therein, the evident care and reflections with which it was drawn, the extensive provisions of the same and the particular expressions found in the closing paragraph thereof we are constrained to hold that there was, at least in the mind of Mrs. McNair, a document before her sufficiently complete to induce her to affix her name thereon in token of execution of the same as her will. Nothing appearing from the writing itself suggests to us that Mrs. McNair intended to or should have added thereto, as further evidence of completeness, some expression in the nature of a formal finality. The same bears date nineteen months before her death, a circumstance furthering the view that she long looked upon her writing as a finished task. We think it should not be disregarded and cast aside now.

We perceive no possible benefit to be derived from relating in detail the extraneous evidence introduced for the purpose of defeating what appears from the writing itself to be a completed and executed document. Evidence of that character submitted by the proponents of the will is in sharp conflict with that introduced by contestants and tends strongly to uphold the view that the writing was regarded by Mrs. McNair as a finished production. We conclude that the instrument itself is the best evidence of the author's

purposes and intention and that the same is such as to sustain the decision here for review. Appellants have not convinced us that the learned trial court was wrong.

Among the decisions of the courts of other jurisdictions treating the question, and sustaining the views we have stated above, are the following. In re Gardener's Estate, 84 Cal. App.2d 394, 190 P.2d 629; In re Kaminski's Etate, 45 Cal. App.2d 779, 115 .P.2d 21; In re Kinney's Estate, 16 Cal. 2d 50, 104 P.2d 782; In re Johnson's Estate, 209 Iowa 757, 229 N. W. 261; In re Norris' Estate, 221 Mich. 430, 191 N. W. 238, 29 A. L. R. 884, with annotation following; In re Cravens' Estate, 177 Minn. 437, 225 N. W. 398; Lawson v. Dawson's Estate, 21 Tex. Civ. App. 361, 53 S. W. 64.

The decision and judgment appealed from are affirmed.

SMITH, P.J., and RUDOLPH, J., concur.

ROBERTS and SICKEL, JJ., dissent.

ROBERTS, J., (dissenting).

It is too well recognized to require citation of authority that the right to make a testimentary disposition of property is not an inherent right, but is subject to legislative regulation and control, and that statutory requirements are not merely directory but mandatory and must be substantially complied with.

This court has considered the nature of evidence permissible and its sufficiency in determining whether a will has been "signed by the hand of the testator himself" as required by the provisions of SDC 56.0209. In re Brandow's Estate, 59 S. D. 364, 240 N. W. 323. The conclusion there expressed is that the face of an instrument offered as an olographic will must establish that it is a completely executed document and that the requirement of a signature is satisfied, though found elsewhere than at the end if it was affixed with the intent to execute the will. In construing an identical statute, the Supreme Court of California in Re Estate of Manchester, 174 Cal. 417, 163 P. 358, 360, L. R. A. 1917D, 629, Ann. Cas. 1918B, 227, said: "The true rule, as we conceive it to be, is that, wherever placed, the fact that it

was intended as an executing signature must satisfactorily appear on the face of the document itself. If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears. If placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should there serve as a token of execution. If such inference thus appears, the execution may be considered as proven by such signature."

The document under consideration cannot be deemed a valid will in the absence of anything on its face to raise an inference that the writing of the name in the body of the document was intended as a signature executing the document. There is no language in the document which adopts the name as a signature for purposes of execution and in my opinion the form of the document and its contents are not sufficient to give rise to a positive inference that decedent regarded the document as a completed will and that her name therein was intended as an executing signature. For these reasons, the judgment below should in my opinion be reversed.

SICKEL, J., (dissenting).

The majority opinion is based on the rule that "the only evidence that will warrant the conclusion that a holographic will is a complete and executed document must be found in and on the instrument itself." In re Brandow's Estate, 59 S. D. 364, 240 N. W. 323. The burden of proving due execution is on the proponents of the will. In re Taylor's Estate, 39 S. D. 608, 165 N. W. 1079. The first question here is whether the proponents have sustained the burden of proof.

The instrument in question consists of three sheets of paper, unattached. The entire instrument is in the handwriting of the testatrix. In the first paragraph she states

"I, Ella McNair of Wessington, So. Dak. do hereby make my last will." This is followed by a number of specific bequests in separate paragraphs, and a paragraph creating a trust in part of the estate. The writing first covers one side of each sheet of paper and continues on the back of the third sheet to about the middle of the page. It does not revoke former wills, it does not appoint an executor, and contains no concluding paragraph to indicate that the will has been completed. It is not signed at the end. At the top of the second sheet she wrote "Will of Ella McNair" and at the top of the first paragraph of the third sheet she wrote "Will, Ella McNair."

An holographic will must be completed and signed, though not necessarily at the end. "If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears." Further: "The name written at another place than the end of the document, and not for the purpose of authenticating it and indicating its completion, but merely to identify the person who is making the will, cannot be deemed to be a name 'signed' to the document, unless that word is given a meaning entirely different from that which it is generally understood to have." In re Estate of Manchester, 174 Cal. 417, 163 P. 358, 359, L. R. A. 1917D, 629, Ann. Cas. 1918B, 227.

When the written name of the testator appears in the exordium there must be something in the document or in the closing paragraph to indicate that the testator intended to adopt that signature as the executing signature of his will. In re Hurley's Estate, 178 Cal. 713, 174 P. 669.

It has been held that "The abrupt termination of the document near the middle of the last page is a strong indication of decedent's intent to do something more in order to make a complete will." In re Bernard's Estate, 197 Cal. 36, 239 P. 404, 405.

It has been held that where the testatrix wrote her name in the exordium clause and wrote a concluding paragraph declaring it her will "written, dated and signed by my own hand" not followed by testatrix's signature was a sufficient

execution of the will, "on the ground that the declaration of the testatrix that she had signed the document by her own hand was an adoption by her of her signature as written in the body of the will as her signature in execution of it." In re McMahon's Estate, 174 Cal. 423, 163 P. 669, L. R. A. 1917D, 778, as reviewed in Re Devlin's Estate, 198 Cal. 721, 247 P. 577, 580.

Where there is nothing from which the inference can be drawn that the testator signed the will or that he intended to adopt as his executing signature the name he has inserted in the exodium, the evidence is insufficient to prove execution. In re Devlin's Estate, 198 Cal. 721, 247 P. 577.

In re Streeton's Estate, 183 Cal. 284, 191 P. 16, 18, the name of the testator was written by him in the upper left-hand corner of the page. In affirming the Manchester and Hurley cases the court said: "It must be assumed that it was placed on the document for some purpose, and the only apparent and reasonable purpose under the circumstances would seem to be the signing of the instrument with the intention of authenticating the same. This conclusion becomes the more compelling when we consider that the name is written in a blank space at the beginning of the instrument; for such a space is the most natural one in which to place a signature when the usual place at the end of the document is unavailable. The fact that the end of the page was torn off * * * tends to support, rather than defeat, the inference that the name was written at the top of the page with the intention of authenticating the instrument." It was held that the will was properly executed on the ground that it appeared from the instrument itself that the testator intended his name to be his signature. In the case at bar the will terminated near the middle of the last page and the additional space was available for the testatrix's signature. The inference referred to in the Streeton case has no application to this case under the facts.

In re Bauman's Estate, 114 Cal. App. 551, 300 P. 62, 64, it was found that "The final clause gives a finishing touch indicating that the testatrix considered it a completed thing

with nothing more to be added," and that this constituted a sufficient execution of the will though the signature was found no other place than in the exordium.

The Supreme Court of California In re Kinney's Estate, 16 Cal.2d 50, 104 P.2d 782, has held that completeness alone is sufficient evidence of the adoption of the name placed in the body of the instrument as the signature of the testator.

The case of Lemayne v. Stanley, an English case reported in 3 Levinz 1, often referred to as the leading case on the signing of holographic wills was in fact an attested will. The will was also a sealed instrument and three of the judges concluded that the seal itself was a sufficient signing. It might also be observed that this decision was followed by an amendment of the statute requiring that all wills be signed at the end thereof.

The abrupt manner in which the will was terminated at the middle of the last page, without a signature; the failure of decedent to indicate an intention to adopt her name written elsewhere as an executing signature, and the absence of anything else in the document showing an intention to give it finality, leads one to the conclusion that the name of decedent as it appears in and on the instrument was written there for the purpose of identification and not for authenticating it or to indicate its completion as a will.

In the contest of wills issues of fact may be raised as to the due execution of the will by decedent and any other questions substantially affecting the validity of the will. SDC 35.0301. In this case contestants allege that the instrument was not signed nor executed as a will, and that it was not intended by the deceased to be her will. At the hearing on the contest in the county court and on appeal in the circuit court evidence was introduced showing that Ella McNair was educated, intellectual and capable. She taught school for many years, managed her own property after the death of her husband in 1936 and she had made at least three prior wills, one of them holographic. She died in 1946 at the age of eighty-three without issue. Some two or three years before her death her attorney, at her request prepared the form of a holographic will for her use in writing a

new will. The instrument in question follows the form thus prepared, precisely, until it reaches about the middle of the section creating a trust. Then she deviated from the form and apparently completed that section. There the document ends. But, the form prepared by her attorney contained a paragraph revoking all prior wills, and still another paragraph naming an executor. At the end was a line and under it was written the word "signature" in parentheses. None of these provisions indicated by the form are contained in the document and the will was not signed at the end as was indicated by the form. It appears that after decedent was taken to the hospital she made preparation for the execution of still another will and submitted to her attorney instructions therefor. Such will was drawn by him for her signature but she died before signing it. It also appears from the evidence that the proposed will fails to make disposition of all of decedent's property. Other property of the value of about $3,000 was not disposed of by the document, and the document contains no residuary clause. The attorney's outline was still among decedent's possessions at the time of her death. This evidence was submitted in the county court and in the circuit court, over proponents' general objection that extrinsic evidence was not admissible on behalf of contestants to show that the document was neither completed nor executed. Findings of fact were made in the county court and in the circuit court based upon this evidence. In the brief respondents argue the extrinsic evidence without discussing its admissibility, and contend that it strengthens respondent's case. Yet, the majority opinion on the principle announced in the Brandow case holds that evidence of surrounding circumstances is incompetent and inadmissible and gives it no consideration on this appeal.

The rule stated in the Brandow case is to the effect that "* * * a fatal defect in the execution of the instrument appearing on its face cannot be aided or supplied by parol proof." 68 C. J., Wills, §765. In the Brandow case the instrument was signed by decedent at the end. It was completed and executed. The issue was whether the instrument was testamentary in character and the court held "If it can

be gathered from an inspection of the whole instrument that it is intended as a last will and testament, the statute is satisfied." [59 D. 364, 240 N. W. 324] The court followed the general rule that when a will is in the handwriting of decedent and shows on its face that it was a completed instrument with the name of the decedent signed at the end, the execution of the will is established subject to other questions which substantially affect the validity of the will. In re Estate of Manchester, supra. In other words the proponents have then sustained the burden of proof.

Even if it be assumed that the burden of proof has been sustained by the document itself, the contestants have the right to oppose the probate of it on the ground that it was not duly executed. SDC 35.0301. It is a general rule that where the issue is whether a will was executed the plan or design or prior intention of the testator is relevant to show the doing or not doing of the alleged act. Wigmore on Evidence, 3d Ed., § 112, "* * * In arriving at such intention the court is not limited to an examination of the document itself, but may consider surrounding circumstances." 68 C. J., Wills, § 225. When it has been proved that the testator signed the instrument and the subscribing witnesses have signed the usual attestation clause "there arises a strong presumption that every one of such statutory requisites were complied with." However, this presumption may be overcome by clear and satisfactory evidence. In re Taylor's Estate, 39 S. D. 608, 165 N. W. 1079; Campbell v. Henley, 172 Tenn. 135, 110 S. W.2d 329. It is my opinion that the Brandow case does not deny the admissibility of the extrinsic evidence submitted at the trial on behalf of contestants and in rebuttal, and that such evidence should be considered by this court on the question of whether decedent intended her name, as it appears in the instrument, as an executing signature.

I can find no evidence in the document to justify the statement that "the instrument was written at a single sitting." When a so-called will consists of several loose sheets of paper, has not been signed at the end, and contains no concluding paragraph designed to give it finality deced-

ent might have added a paragraph when it suited her mood, and she might have destroyed and added pages at her pleasure. Such a writing has no more finality than a loose-leaf ledger system.

It is my opinion that the judgment in this case should be reversed.