[L. A. No. 20642. In Bank. Oct. 28, 1949.]

Estate of NELLIE DUMAS, Deceased. MRS. J. H. MEHL et al., Respondents, v. KENNETH DUMAS et al., Appellants.

Dunlap, Holmes, Ross & Woodson and Emrys J. Ross for Appellants.

E. L. Searle for Respondents.

CARTER, J.—This is an appeal from an order in a probate proceeding admitting to probate certain papers as the holographic will of Nellie Dumas, deceased.

From the findings of fact (the appeal is on the judgment roll), the following facts appear: The deceased left neither spouse nor issue. The contestants are a nephew, niece, and brother of deceased's previously deceased spouse. The instruments admitted to probate consist of three papers upon which is writing all in the hand of the testatrix. The first page (the pages are not numbered, but we designate them by number for convenience), was written on January 20, 1935, in a ''greenish-blue'' colored ink. It is dated at the top and is headed ''The Last Will and Testament of Nellie Dumas.'' Then follows the customary recitals of soundness of mind and that she makes and publishes her will; that all her debts are to be paid; that ''The following bequests are to be given my friends herein named''; that Mrs. H. J. Mehl and Mrs. Walter Niederer are to serve as ''Executors.'' Thereafter it states: ''In testimony I set my name this 20th day of January, 1935,'' signed Nellie Dumas, and her address. A blank space of several inches thereafter follows. The second and third pages were written nine years after the first page and are in black ink. Minute spots of greenish-blue ink appeared on the reverse side of the third sheet. The second page is completely filled with bequests of mentioned property to various named persons. There is an interlineation on one item that was made by the testatrix sometime after the second and third sheets were written. The second page is neither dated nor signed. The third sheet continues with the bequests and winds up about three-fourths of the way down the paper with ''signed Nellie Dumas'' and her address. No date appears thereon.

The court found that all papers remained in the possession of the testatrix at all times until April 3, 1947, when the deceased became seriously ill, dying on April 9, 1947. On the former date, Mrs. Mehl and Mrs. Niederer called upon deceased at her home, and to the inquiry of the former whether she had a will, the testatrix, being unable to speak, nodded her head in the affirmative. At the request of the testatrix, Mrs. Niederer, in the presence of Mr. Patton, a roomer in deceased's home, obtained a satchel from a closet and gave it to Mrs. Dumas. The latter removed a manila envelope therefrom containing the above mentioned papers and indicated that it contained her will. Although no papers were removed from the envelope by the testatrix, it follows that the three papers above mentioned were in it inasmuch as the subsequent events

show little opportunity for a substitution. She placed that envelope in a white envelope, sealed the latter and had Mr. Patton, Mrs. Mehl and Mrs. Niederer sign their names thereon. It was handed to Patton with instructions to deliver it to Weiser who was to, and did, place it in deceased's safety deposit box where it remained until after her death. The three sheets in the envelope were not mechanically fastened together, but were folded in a unit in the order heretofore discussed.

There is no question of any fraud, forgery or undue influence, inasmuch as contestants offered no evidence on the subject.

Contestants urge that the first page was a complete will in itself and the second and third sheets were, in effect, codicils or new wills, but ineffective as such, for the second sheet is neither dated nor signed and the third is not dated, both requirements of an holographic will. (Prob. Code, § 53.) Proponents counter with the proposition that all the papers were one integrated document—a will, and that the testatrix adopted the date on the first page by her signature on the third page, and the second sheet was only a part of a continuous testamentary document.

■■■ Proponent's contention that the adoption of the date on the first paper by the signature on the third must prevail under the reasoning of the authorities. In *Estate of Finkler*, 3 Cal.2d 584 [46 P.2d 149], this court was considering an holographic will on the face of which interlineations had been made by the hand of the testator at some unknown time after the paper was dated and signed. The court, holding that the paper as altered by the interlineations, was the will of the testator, although he had not re-signed or redated it after making the alterations, stated at page 599: "The final contention of appellants is that the wrong document was admitted to probate in that decedent, *after executing the will of April 21, 1930*, made thereon certain cancellations, changes and interlineations, in his own handwriting, which altered the meaning of the instrument. Behind this contention is the claim that under the document as altered, the deceased died intestate as to his real property, which is the bulk of the estate. . . .

"The court admitted to probate the document as originally executed, acting unquestionably upon the conviction that the cancellations and interlineations were of no effect, because not accompanied by a redating, reexecution and republication of the instrument. In this assumption the court fell into

error. As the changes were made in the handwriting of the testator and the document as changed remained in his possession until his death, this raised the clear presumption that the changes were made *animo cancellandi*. The rule in this respect has been stated by Mr. Page in his work on Wills, volume 1, second edition, section 500, page 822, as follows:

" 'If witnesses are not necessary to the validity of a will, as under the ecclesiastical law, interlineations made by a testator after he has executed his will, are a part thereof; *since, by his act of making such interlineations, intending them to be a part of his testament, testator has reexecuted his testament in such form as would have been sufficient for the original execution thereof.*

" 'Interlineations in a holographic will after execution are a part thereof; and if they are not in testator's handwriting, the will is rendered invalid thereby.

" 'Since holographic wills do not need witnesses, testator's act in erasing words and interlining others may amount to a revocation and reexecution, although such conduct would not have this effect if the will were an attested will.

" 'Here again, we have an apparent, but not a real exception to the general rule with reference to the effect of interlineations, since the holographic will needs no witnesses; and its execution in testator's handwriting, including the interlineations, is a sufficient compliance with the statute which regulates the original execution of the will; and hence it may be justified on the theory of a sufficient re-execution.'

"The doctrine is also supported by the following additional authorities, to wit: The case of *Succession of Guiraud,* 164 La. 620 [114 So. 489], where the testator, after making a bequest to his clerk in a paragraph of his will later interlined it with the following language: 'I revoke the donation to Lionel Larrieu my clerk.' The court said: 'Even if the clause was inserted after the will was signed, and on a day actually subsequent to its date, it was the act of the testator himself, and the date and the signature apply to all that precede them, and make the instrument in its entirety a valid olographic testament.' The applicable section of the Civil Code of Louisiana had the same meaning as our own former section 1292, subdivision 2cc, now section 74, subdivision 2 of the Probate Code. (*Estate of Fay,* 145 Cal. 82, 85 [78 P. 340, 104 Am.St.Rep. 17].)

"The case of *LaRue* v. *Lee,* 63 W.Va. 388 [60 S.E. 388, 129

Am.St.Rep. 978, 14 L.R.A.N.S. 968], is instructive for, speaking of a will in somewhat the same condition as the one before us, the court said: 'So we say that erasures in a holographic will, made by the hand of the testator himself, is legal revocation of such portions as are so erased, since it is in the manner required for a will of that kind to be executed; the new portions written into such will by the same hand, to take the place of erasures, or new portions otherwise written therein by the same hand, being thereby executed in the manner which justifies the validity of a holographic will originally, so long as the signature of the testator remains in such manner as to make it manifest that it is intended as a signature, do not in any sense invalidate the will or affect its finality, since it is then a complete new holographic will, and needs no reexecution or republication before witnesses, because it did not originally demand execution and publication before them *To say that the whole must be rewritten and again signed by the testator is simply to say that which is neither reasonable nor practicable.*'

"In fact this rule was necessarily indorsed and followed by this court in the case of *Estate of Wikman,* 148 Cal. 642 [84 P. 212], where the question before the court was the effect upon a holographic will of a deletion of the name of the executrix named therein. The court sustained this act as a revocation of that provision of the will and gave final effect to the instrument as changed. If such cancellations are to be sustained, then so must interlineations which have been made with testamentary intent." [Emphasis added.] The dissenting justice in that case expressly agreed with the rule and this court approved the holding in *Estate of Towle,* 14 Cal.2d 261, 270 [93 P.2d 555, 124 A.L.R. 624], stating: "It has been held that the making of any alteration or interlineation by a testator in his original holographic will in his own handwriting constitutes a reexecution and republication of such instrument and it is entitled to probate as altered. (*Estate of Finkler,* 3 Cal.2d 584, 600 [46 P.2d 149].)" *Estate of Swendsen,* 43 Cal.App.2d 551 [111 P.2d 408] is very similar to the case at bar. There *two pieces of paper* were offered as a will. Both were in the testator's handwriting. On one appeared a date and a statement that it was his last will and a devise of various properties to Mrs. Earnest. It was signed by the testator and two witnesses at the bottom. It was written in ink. The other paper, written in pencil by the testator, was neither dated nor signed, merely stating: "P.S. I appoint Mrs. Earnest

as executor.'' The trial court found that the second document looked older than the first, was different paper, and had been torn from a larger sheet; that one of the witnesses to the will testified that the testator exhibited both documents to him and said they were his will and signed the first one. The two papers in an envelope were handed to Mrs. Earnest. The court held that the two papers were one valid will. (See, also, *Estate of Cazaurang*, 42 Cal.App.2d 796 [110 P.2d 138] ; *Triplett Ex'r.* v. *Triplett,* 161 Va. 906 [172 S.E. 162] ; *Moyers* v. *Gregory,* 175 Va. 230 [7 S.E.2d 881] ; Thompson on Wills (2d ed.) § 160 ; Page on Wills (Lifetime ed.) § 393 ; 28 Cal.L. Rev. 274.) The essence of the holdings in the foregoing authorities is that additions or alterations may be made in a holographic will if done in the testator's handwriting, without the necessity of resigning and redating. The old signature and date are adopted. In the case at bar we have the adoption of the old date alone, and the case is thus stronger than those discussed. There is no indication in *Estate of Finkler, supra,* or the other authorities, that the mere lapse of time between the execution of the several papers, additions or interlineations is crucial. On the contrary, the theory of those cases is contrary to such an assumption. It may be that the time element is a factor to be considered along with other things but it is not controlling where the papers remain in the possession of the testator at all times after their execution and the other circumstances here present exist. *Estate of Hartley,* 181 Cal. 469 [184 P. 950], *Estate of Olssen,* 42 Cal.App. 656 [184 P. 22], are not contrary to the rule in *Estate of Finkler, supra.* They did not have to decide the question inasmuch as they relied upon a presumption that the two writings were made at the same time.

■ The rule of integration is applicable here, rather than the principle of incorporation by reference. As said in *Estate of Wunderle,* 30 Cal.2d 274, 281 [181 P.2d 874] : ''. . . integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will . . . [cases cited]. Thus several writings, connected by sequence of thought . . . folded together, . . . or physically forming one document, . . . have been admitted to probate as constituting an holographic will.

''In *Estate of Swendsen, supra* [43 Cal.App.2d 551], an holographic will was written on two separate pieces of paper,

but only one of them was dated. Although the papers were not attached, and it was not apparent from looking at them that they were connected in any way, both were admitted to probate upon the testimony of two witnesses quoting the testator as declaring that the two pieces of paper constituted his will.'' It is to be noted that in *Estate of Swendsen, supra,* referred to with approval in *Estate of Wunderle, supra,* the facts of which have heretofore been stated, the two papers were admitted as the will of the testator because he declared it to be his will. The court discusses the authorities: ''In that case [*Estate of Olssen,* 42 Cal.App. 656 (184 P. 22)] the testator while in a hospital made a holographic will which he dated and signed. Below his signature he wrote another sentence and again attached his signature but did not write in the date. The reviewing court in construing the document as a single instrument held that the question 'must be determined by the circumstances under which the instrument was drawn, as revealed by the testimony in the case . . .'

''In *Estate of Merryfield,* 167 Cal. 729 [141 P. 259], the testatrix wrote upon three separate sheets of paper but the last one only contained the elements necessary to constitute a holographic will. The three sheets of paper, which had been arranged and folded together in proper sequence, were found on the day before the death of the testatrix in a locked drawer with other papers. The court held that the three papers constituted one instrument, which was admitted as the last will of the decedent. In affirming the order of the probate court the reviewing court held that the fact that the will was made upon more than one sheet of paper was immaterial and that it was not necessary that the several detached pieces of paper be fastened together by mechanical or other devices.

''In *Estate of Finkler,* 3 Cal.2d 584 [46 P.2d 149], the testator executed a holographic will and on a later date made certain interlineations therein. In holding that the interlineations should be given effect as part of the will, the court at page 600 quoted from Page on Wills, volume 1, second edition, section 500, page 822: 'If witnesses are not necessary to the validity of a will, as under the ecclesiastical law, interlineations made by a testator after he has executed his will, are a part thereof; since by his act of making such interlineations, intending them to be a part of his testament, testator has reexecuted his statement in such form as would have been sufficient for the original execution thereof.'

"From the cases above referred to it is apparent that on the present appeal these rules are applicable: (a) The circumstances surrounding the execution of the will may be taken into consideration (*Estate of Olssen, supra*) ; (b) the will may be made on several pieces of paper which need not be fastened together (*Estate of Merryfield, supra*) ; (c) an addition to the will may be made on a date subsequent to the date on which it was signed (*Estate of Finkler, supra*) ; (d) the signature does not necessarily have to be at the end of the will (*Estate of Morgan, supra*). The application of these rules to the facts of the present case leads unerringly to the conclusion that the two pieces of paper together constitute one instrument, the last will of decedent. The writings on the two papers unquestionably are complementary to each other and together they constitute a rounded-out will. When decedent wrote upon the paper bearing his signature he made a will giving all of his property to Mrs. Earnest, who was not a blood relation, and it was entirely reasonable for him to name her executrix without bond, a course usually followed by those making wills under similar circumstances. On the other hand it would have been very unreasonable for him to leave the administration of his small estate to a stranger, a public officer who would place in the public treasury the administration fees which ordinarily go to the sole beneficiary.

"In its finding that the second piece of paper was not a part of the will the probate court appears to have been influenced by the fact that the two pieces of paper were of different types and that the writing on one of the pieces was in ink while the other was in pencil. As against these physical facts we have the uncontradicted and clearcut testimony of two witnesses (found by the court to be true) that decedent at the time he requested them to act as witnesses stated that both pieces of paper constituted his will and the additional testimony of Mrs. Earnest that both pieces of paper were in the envelope which decedent gave to her with the statement that the contents of the envelope were for her and that he was giving her everything. If the two pieces of paper had been of the same kind and both had been written in ink it could not be successfully argued that they would not together constitute a single instrument and the court unquestionably would be required to receive them together as the will of decedent. The only evidence before the court establishes that decedent considered the two pieces of paper to be his will and desired that they be acted upon as such. The circumstances that the

pieces of paper are of different kinds and that one of the papers bears writing in pencil are not of sufficient importance to support a ruling that the penciled paper is of no effect.''

In the case at bar there are very pertinent indications that the three papers constituted the will of the testatrix and that she adopted the date of the first paper for the rest. She declared it to be her will. They were folded in proper and chronological sequence and placed in an envelope. They so remained in her possession until shortly prior to her death when, under special instructions, they were deposited elsewhere in a sealed envelope. While it may be true that, legally speaking, the first sheet constituted a complete will, yet from the standpoint of the intent of the testatrix, it was obviously not intended as her complete testamentary act for she therein did not dispose of any of her property, the primary function of a will. On the contrary, she clearly indicated therein that such disposition was to follow and the other sheets carry out that intent. The continuity of the context is manifest. Thus we clearly have an intent that all the papers were to be considered together as one continuous and complete document. That continuity is not destroyed by the time interval between the execution of the first and second and third sheets.

*Estate of Wunderle, supra,* and *Estate of Keith,* 173 Cal. 276 [159 P. 705], are clearly distinguishable from the case at bar. There the circumstances were not present which pointed clearly to the intent that the papers were one integrated instrument.

The order is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—I cannot agree with the conclusion reached in this case. ''The authorities without exception hold that the privilege of making testamentary disposition of property is not an inherent or even a constitutional right; that it is wholly statutory; and that since the legislature has seen fit to impose certain requirements looking to the execution of a will, compliance with these exactions is absolutely necessary to the validity of any instrument offered as a testament.'' (*Estate of Carpenter,* 172 Cal. 268, 269 [156 P. 464, L.R.A. 1916E 498].)

The rule has developed that an holographic will may be altered by an unsigned and undated interlineation in the handwriting of the decedent. (*Estate of Finkler,* 3 Cal.2d

584 [46 P.2d 149].) There is a logical and cogent distinction between the provisions of a will made by interlineation and an addition by way of a subsequently written page or pages placed with the executed will. This distinction is not recognized by the majority opinion. In *Estate of Finkler, supra,* there was a validly executed holographic will. Subsequently, interlineations in the hand of the testator were made *on the face of* this paper. The same situation was presented in *Succession of Guiraud,* 164 La. 620 [114 So. 489]. The case of *LaRue* v. *Lee,* 63 W.Va. 388 [60 S.E. 388, 129 Am.St.Rep. 978, 14 L.R.A.N.S. 968], concerned erasures and writing placed in the blank spaces of a testamentary document after it was signed. The essence of the holdings in these decisions is *not* that "additions or alterations may be made in a holographic will if done in the testator's handwriting, without the necessity of resigning and redating"; the decisions are authority upon the sole issue of interlineation and do not determine the questions presented in the Dumas case.

Logically, interlineations made after an holographic will has been executed justify a relaxation of the rules by which the validity of that kind of a will is determined. Under such circumstances, it is apparent from the *face of the instrument* that it is a complete will; usually the basic evidence of fraud or forgery, if any, is the interlineation. In the Dumas case the fact that pages two and three are in the hand of the testatrix and were placed in an envelope together does not indicate, in itself, either the absence of fraud or that the instrument is a complete one.

The majority opinion mentions that there were minute spots of greenish-blue ink on the reverse side of the third sheet. The only possible importance this fact could have is to allow an inference that this paper was in the testatrix's presence at the time the first page was written, although the words on the third sheet were written some nine years later with black ink. But the majority opinion neglects to mention that the same spots appeared on the back of the first sheet, allowing an inference that still another page of the will was written at the same time as the first one, or later when green ink was still or again being used by the testatrix. The instrument itself gives no evidence that during the nine years after the first sheet was written and signed there was, at no time, a testamentary document of only three sheets. An essential basis for the application of the rule allowing the probate of

a will with interlineations is therefore lacking, namely, an original document complete in itself to which additions thereafter were made in the hand of the testator. Under such circumstances, it is said, there is circumstantial evidence of the probability of trustworthiness.

The law requires that the court be able to determine from an examination of the instrument itself that it is the complete will of the decedent. Thus where the writing terminates with one of several dispository clauses, and there is nothing to indicate that the document was intended to be complete, probate properly is denied. In *Estate of Devlin,* 198 Cal. 721 [247 P. 577], the document offered for probate ended with a dispository clause but no punctuation or signature to indicate the completion of the will. In denying probate, the court referred to *Estate of Bernard,* 197 Cal. 36 [239 P. 404], where it was held that the abrupt termination of the document near the middle of the last page was a strong indication that the decedent intended to do something more in order to make it a complete will and compelled the conclusion that decedent had no intention of adopting the name written in the opening clause as the executing signature.

The Dumas instrument is signed at the end and no problem is presented as to its termination. However, an examination of the instrument fails to indicate that the second sheet contains the first of the dispository clauses. The second sheet is merely a list of bequests. There may have been any number of others either before or after it. The only evidence that the three sheets comprise the complete will of the testatrix is that they were contained in a single envelope and the testatrix so indicated by nodding her head in reply to inquiries. In the Devlin case the document was found enclosed in an envelope upon the face of which the deceased had written: "This Envelope Contains the Late Joseph Devlin's Will. . . ." Nevertheless, because the will itself did not evidence its completeness, probate was denied. (*Estate of Devlin,* 198 Cal. 721, 723 [247 P. 577].)

The writing offered as the will of Mrs. Dumas does not negative the opportunity for fraudulent substitution or extraction. There are separate writings on separate pages with no physical guarantee against substitution or extraction. On the contrary, the presence of the ink spots on the reverse side of the first page would permit an inference that, at one time, there were other pages containing writing in green ink. It cannot be determined from the instrument itself whether, if

there were such pages, they were destroyed by the testatrix or fraudulently extracted by another so that the three pages do not constitute a complete will.

The majority opinion refers to the testamentary writing considered in *Estate of Swendsen*, 43 Cal.App.2d 551 [111 P.2d 408], which was dated and signed. The second page bore neither date nor signature but the signature on the first page was affixed in the presence of two witnesses after the writing of the second page and both pages were exhibited to persons present at the time of signing. The facts do not show a completely executed will and a subsequently written addition to it. Both papers attained the status of a will at the same time, namely, on the act of signing the first of two and only two pages.

In *Estate of Hartley*, 181 Cal. 469 [184 P. 950], an holographic will, dated and signed by the testator, followed by a residuary clause, likewise holographic, signed but not dated, was admitted to probate as a single instrument upon the presumption that both portions of the instrument were executed at the same time. The point made on contest was that the residuary clause was a codicil, and not being separately dated was void. The court quoted with approval from *La Grave v. Merle*, 5 La.Ann. 278, 281 [52 Am.Dec. 589], the following language: "Where an olographic testament contains several dispositions, of which the first one, at the same time dated and signed, and the second are only signed by the testator, are the latter null for want of date? They are; provided that from the manner those clauses are conceived and placed, they cannot be considered to have been written immediately after the first, and on the same day that the first was written." In the Dumas case the second and third pages were written nine years after the first was dated and signed. Not only is *La Grave v. Merle* directly in point, but it is significant to note that the holographic will, as a distinct type, originated at French law and was expressly provided for in the Code Napoleon. This provision, in substantially the same form, was carried over into the Louisiana Civil Code. (See Page on Wills, vol. 1 (Lifetime ed.) § 384, p. 694.)

The case of *Estate of Skerrett*, 67 Cal. 585 [8 P. 181], involved two papers. The first was a deed of gift and the second a letter referring to the first. There was no intimation that the two parts were not written at the same time. *Estate*

*of Merryfield,* 167 Cal. 729 [141 P. 259], was concerned with three separate sheets, only the last of which was dated and signed. But in this case too, there is no basis for an inference that the instruments were not executed either at the same time or at least closely enough together in point of time to be considered a continuous act.

There was presented to the court in *Estate of Olssen,* 42 Cal.App. 656 [184 P. 22], a paper upon which were written what appeared to be two separate wills, one of which was not dated. Although it was construed as one continuous instrument, the court was careful to point out that the facts justified the conclusion of the trial court that the document was all written at one time and, therefore, was to be construed as a single instrument. In another case (*Estate of Taylor,* 126 Cal. 97 [58 P. 454]), the contention of the appellant was that the closing clause of the document should be regarded as an undated codicil. The court determined that from a consideration of the facts the trial court was justified in concluding that the instrument was written all at one time and thus was to be construed as a single instrument. The will admitted to probate in *Estate of Henderson,* 196 Cal. 623 [238 P. 938], consisted of two parts on the same sheet. The court found that both parts were written on the same day.

Throughout the opinions in these cases is the conscious awareness of the importance to be attached to the relative times at which the various documents were written. Each decision shows that reliance was placed upon facts which indicated the combined writings represented a continuous testamentary act by way of time as well as content. In the Dumas writing, although there is no evidence of fraud, the three pages, taken together do not, in themselves, refute the possibility of fraud. Extrinsic evidence alone must be relied upon. This absence of a physical guarantee against fraud is the decisive factor requiring that the rule allowing interlineations in holographic wills should not be applied to the Dumas document.

For these reasons, I would reverse the order of the probate court admitting the writing to probate as the will of Mrs. Dumas.