211 Cal.App.2d 23 (1962)
Estate of EUNICE L. McCARTY, Deceased. JULIUS LUOMA, Plaintiff and Respondent,
v.
THE FIRST CHURCH OF CHRIST, SCIENTIST, BOSTON, MASSACHUSETTS, Defendant and Appellant; LAWRENCE DOYLE et al., Proponents and Respondents.
Civ. No. 20493. 
California Court of Appeals. First Dist., Div. Two. 
Dec. 18, 1962.
 Lillick, Geary, Wheat, Adams & Charles and Robert R. Vayssie for Defendant and Appellant.
 Donahue, Richards & Gallagher and James H. Riggs for Plaintiff and Respondent.
 William H. Quinn for Proponents and Respondents.
 SHOEMAKER, J.
 This is an appeal from a judgment admitting to probate a formal will and denying probate of a holographic codicil. Appellant, The First Church of Christ, Scientist, in Boston, Massachusetts, is the residual legatee named in the codicil to the will of Eunice L. McCarty. Respondent Julius Luoma, the testatrix' brother, is devised $10,000 under the will, but only $1.00 under the codicil.
 The testatrix, Eunice McCarty, died in Alameda County on August 9, 1960. The Bank of America National Trust and Savings Association, named as executor of the will, duly filed a petition for probate of will and codicil and for issuance of letters testamentary. Respondent Luoma opposed *25 probate of the codicil on the ground that it was not executed in the form required by law. Appellant The First Church of Christ, Scientist, answered, denying that the codicil was invalid and praying that it be admitted to probate.
 [1a] The undisputed facts disclose that the will and codicil were found in a single envelope on the decedent's closet shelf shortly after her death. On the face of the envelope was written "Eunice L. McCarty Last Will." The will is a typewritten, witnessed document bearing the date April 16, 1957. The codicil is a separate handwritten page bearing the date July 23, 1959. At the top of the formal will appear certain notations in the decedent's handwriting. [fn. 1] In one color of ink appear the words, "This will has been changed May 26, 1958," "Copy adtechet [sic] to this," and the signature "Eunice McCarty" underlined once. In a different ink color appear the words "Have changes [sic] this last will July 23, 1959." "Have changed this will July 23--1959 my own handwritten will adtechet [sic]." Also in this second ink color appear an additional underlining of the signature and lines striking out the words, "This will has been changed May 26, 1958." [fn. 2]
 In the envelope with the formal will was a separate page handwritten on both sides. At the top of the first side appear the words, "July 23-1959. This is my (Last)(Will)." The remainder of the page contains a list of monetary bequests to various named individuals. In the lower right-hand corner of the page is the word "over." The reverse side of the sheet contains several additional bequests, the last one being to appellant church, as the residual legatee. Below the bequests are funeral directions. At the very bottom of the page is the statement that respondent Luoma and three of the other $1.00 beneficiaries named on the other side of the page were intentionally left that amount because they had not been heard from. No signature appears on either side of the sheet.
 The lower court found that the formal will of April 16, 1957, was executed as required by law; that the separate *26 holographic instrument was entirely written and dated in the handwriting of the decedent but that it contained no signature; that the holographic writings at the top of the formal will were not testamentary; and that there was no intent to integrate or incorporate the separate holographic instrument with the formal will or with the holographic writings on its face. The court accordingly admitted the formal will to probate as the decedent's last will and testament and denied probate of the holographic codicil.
 Appellant now contends that the judgment must be reversed because the court erred in holding (1) that the holographic codicil was not incorporated by reference into the writings on the face of the formal will, and (2) that the codicil and the writings on the face of the will were not integrated. In resolving these issues, it must be noted that no extrinsic evidence was introduced by either party as to the decedent's testamentary intentions. The testimony related entirely to the execution of the will which was admitted to probate and the circumstances under which the will and codicil were found. [2] "A reviewing court is not bound by a construction of a document based solely on the terms of the written instrument, without the aid of extrinsic evidence." (Estate of Moody (1953) 118 Cal.App.2d 300, 305 [257 P.2d 709].) Accordingly, the validity of the holographic instrument must be determined entirely by reference to the applicable statutes and principles of law. (Estate of Wunderle (1947) 30 Cal.2d 274, 280 [181 P.2d 874].)
 Probate Code, section 53, provides in part as follows: "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed." In the instant case, it is apparent that neither the handwritten codicil nor the holographic writings on the face of the formal will can be deemed to meet all these requirements, when standing alone. The codicil, although apparently effecting a complete disposition of the decedent's estate, bears no signature. [1b] The holographic writings on the formal will are not testamentary in themselves because they dispose of no property and provide only that the decedent has changed her will by way of an attached document. (See Estate of Sargavak (1950) 35 Cal.2d 93, 95 [216 P.2d 850, 21 A.L.R.2d 307]; Estate of Kuttler (1958) 160 Cal.App.2d 332, 335 [325 P.2d 624].) It is for this very reason that appellant's incorporation by reference argument must fail. [3] In order for incorporation *27 by reference to occur, one writing, which is a complete testamentary instrument in itself, must refer to another document in such a manner as to incorporate it. (Estate of Wunderle, supra, at p. 281.) [1c] In the present case, the writings on the face of the will, although they do refer to the codicil, are not in themselves testamentary. Under such circumstances, the doctrine of incorporation by reference is inapplicable. (Estate of Oravetz (1962) 204 Cal.App.2d 717 [22 Cal.Rptr. 624].)
 Appellant's second contention that the court erred in finding that the codicil was not intended to be integrated with the writings on the face of the will is valid. Appellant points out that the two documents were discovered together in the same envelope; that the writing on the formal will specifically refers to "my own handwritten will" of July 23, 1959; that the codicil is in fact handwritten and dated July 23, 1959. Although the signature on the face of the will appears from the color of the ink to have been written in 1958, appellant points out that the second underlining beneath the signature is in the same shade of ink as the 1959 notations and the codicil. It is appellant's position that the testatrix, after drawing the 1959 codicil, made a notation to that effect on the face of the formal will. She then crossed out the inapplicable portions of the 1958 notations and underlined her signature in order to adopt it for the purpose of the 1959 codicil. (Appellant supports its contention that the codicil was completed before the 1959 notations were made by pointing out that the writing on the face of the will specifically states "Have changed this will July 23-1959." (Emphasis added.) Since the handwritten documents themselves and the circumstances under which they were found thus reveal an intent to integrate, appellant contends that they must be construed together and that, when so construed, they fulfill all the requirements of a valid holographic will.
 [4] "In the law of wills, integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will." (Estate of Wunderle, supra, at p. 281.) [5] Thus several writings which are connected by sequence of thought (Estate of Swendsen (1941) 43 Cal.App.2d 551 [111 P.2d 408]), folded together (Estate of Merryfield (1914) 167 Cal. 729 [141 P. 259]), or physically forming one document (Estate of Clisby (1904) 145 Cal. 407 [78 P. 964, 104 Am.St.Rep. *28 58]), have been admitted to probate as constituting a holographic will. [6] It is also clear that a holographic will need not be signed at the end (Estate of Morgan (1927) 200 Cal. 400 [253 P. 702]), and that the testator may make alterations to a holographic will on a date subsequent to the date on which it was signed. (Estate of Finkler (1935) 3 Cal.2d 584, 599-602 [46 P.2d 149].) [7] Such alterations, when made in the testator's handwriting, operate to adopt the old date and signatures. (See Estate of Dumas (1949) 34 Cal.2d 406, 410-411 [210 P.2d 697], and authorities therein cited.) [8] "If the papers are all holographic and there is a dating and signing somewhere among them, it is immaterial when or where the dating or signing was done so long as it may be reasonably inferred that the testator meant all the papers together to constitute his will and that the signature was written with the intent that it should there serve as a token of execution." (Estate of Moody, supra, at p. 308.)
 In Estate of Dumas, supra, for example, the will admitted to probate consisted of three separate sheets in the handwriting of the testatrix. The first sheet, which was dated, signed, and headed " 'The Last Will and Testament of Nellie Dumas,' " did not dispose of any of the testatrix' property. It contained only the customary recitals of soundness of mind, a direction that her debts be paid, that specified persons serve as her executors, and the statement that " 'The following bequests are to be given my friends herein named.' " (P. 407.) The second sheet, which was written nine years later, in a different ink color, was completely filled with bequests of property to various named individuals. It was neither dated nor signed. The third page, which was written at the same time as the second, listed additional bequests. It was signed but not dated. The three sheets were folded together and placed in an envelope. Shortly before her death, she indicated to a roomer that the envelope contained her will and requested that it be placed in her safety deposit box.
 Although it was contended on appeal that the second and third sheets were invalid as a holographic will because the second was neither dated nor signed, and the third was not dated, the court rejected this argument, stating: "In the case at bar there are very pertinent indications that the three papers constituted the will of the testatrix and that she adopted the date of the first paper for the rest. She declared it to be her will. They were folded in proper and chronological sequence and placed in an envelope. They so remained *29 in her possession until shortly prior to her death when, under special instructions, they were deposited elsewhere in a sealed envelope. While it may be true that, legally speaking, the first sheet constituted a complete will, yet from the standpoint of the intent of the testatrix, it was obviously not intended as her complete testamentary act for she therein did not dispose of any of her property, the primary function of a will. On the contrary, she clearly indicated therein that such disposition was to follow and the other sheets carry out that intent. The continuity of the context is manifest. Thus we clearly have an intent that all the papers were to be considered together as one continuous and complete document. That continuity is not destroyed by the time interval between the execution of the first and second and third sheets." (P.414.)
 In Estate of Skerrett (1885) 67 Cal. 585 [8 P. 181], the court upheld the validity of a holographic will consisting of a handwritten copy of a deed and an undated letter to the testator's sister referring to the deed and indicating his intent that the property was to be hers. The two writings were attached and were found in the decedent's desk drawer. The court stated: "Neither the copy of the deed nor the letter, taken by itself, constitute a will; the one is not testamentary in its character, the other has no date; but taking them together as the deceased left them, forming one document, it is complete. The first part furnishes the date, and the latter the testamentary character." (P. 588.) (See also Estate of Morrison (1950) 98 Cal.App.2d 380 [220 P.2d 413].)
 [9] In the instant case, there was no evidence of fraud, forgery or undue influence. The parties stipulated that the writing on the face of the will and on the separate codicil was that of the testatrix. The testatrix retained possession of both documents until her death. The lower court specifically found that the formal will and the handwritten codicil were folded together in one envelope and that the second underlining of the 1958 signature and all of the 1959 notations on the face of the typewritten will were in the same ink color as the codicil. In addition, the writing on the face of the will expressly refers to a handwritten codicil already in existence. Both handwritten documents bear the same date and are clearly the product of one continuous sequence of thought. Under such circumstances, we do not doubt that the testatrix intended to adopt her 1958 signature for the purpose of executing the handwritten codicil. The intent that the two *30 writings be integrated and construed as one instrument is manifest.
 Estate of Fritz (1951) 102 Cal.App.2d 385 [227 P.2d 539], which respondent contends ought to control, is readily distinguishable from the present case since there the circumstances were not present which pointed to the intent that the papers were one integrated instrument. In the Fritz case, the documents sought to be integrated consisted of a holographic will bearing an incomplete date and a signed and dated letter to the testator's niece Catherine, who was named executrix and a residual beneficiary under the will. The letter contained no reference to any will, but merely offered bits of advice, such as that Catherine retain certain specified stocks " 'for your share of my estate' " (P. 387) and that she refrain from marrying a good-for-nothing fellow who would spend all her money. Although the will and letter were both found in a shirt box, the letter was not contained in the envelope with the will but " 'lay separately in the bottom part of the box.' " (P. 389.) In rejecting the contention that the two writings were intended to be integrated, the court stated: "Not only were they [the letter and will] separate at the time of decedent's passing, but there is not a word in the letter indicating that the testator was bequeathing any property to any person, or was nominating a different executor or attempting to modify the will in any respect. Contrary to appellant's assertion, it is not obvious that the testator's 'intention runs in a coherent and consistent continuity all through' both instruments. ... Notwithstanding their similarities, each is complete as a literary product in itself. Because the will is void for want of a definite date it cannot be vitalized by a letter penned over a year later merely because that letter discourses in part on Catherine's bequests." (Pp. 389-390.) It is evident from the above quoted language that the facts in the Fritz case were totally dissimilar to those in the present case.
 No question is raised as to the correctness of the judgment insofar as it admitted to probate the testatrix' formal, witnessed will. Accordingly, only that portion of the judgment denying probate of the holographic codicil and the writings on the face of the formal will is reversed. The other portions of the judgment are affirmed.
 Kaufman, P. J., and Agee, J., concurred.
NOTES
[fn. 1] 1. It was stipulated at the probate hearing that the handwriting on the face of the formal will and throughout the codicil was that of the decedent.
[fn. 2] 2. Although it may be noted that a second signature is written in the left-hand margin of the will, this signature was affixed when the formal will was attested, undoubtedly as a method of authentication.