[Civ. No. 7844. Fourth Dist. Nov. 1, 1965.]

Estate of AUGUSTA C. CALLAHAN, Deceased. HARRIET A. FINLEY et al., Plaintiffs and Respondents, v. MARGARET C. YOUNG et al., Defendants and Appellants.

Charles D. Swanner and John Neil Stanley for Defendants and Appellants.

Feldman & Gunderson, Kenneth J. Golden and Eric A. Rose for Plaintiffs and Respondents.

WHELAN, J.—The proponents of a holograph offered as the last will of Augusta Callahan have appealed from an order revoking probate which had earlier been granted. The order appealed from was a minute order of July 20, 1964, which recited that the instrument proposed as the last will and testament of Augusta Callahan is found not to be the last will and testament of said deceased and that probate of said will is revoked.

The proposed will is made up of three pieces or strips of paper, each approximately $8\frac{7}{16}$ inches in width, fixed together by transparent adhesive tape.

The upper part (sheet "A"), measuring 5 inches from top to bottom, bears a date July 7, 1950, and thereafter opens with the words: "I Augusta C. Callahan hereby declare this to be my last will and testament." It contains certain specific bequests and a provision for payment of inheritance and estate taxes and ends with this incompleted sentence: "I give, devise and bequeath all of the rest, residue and remainder of my property, whatsoever and wheresoever situated." Sheet "A" had been cut from a larger sheet of which it had been a part; its lower edge was joined by a strip of tape to the upper edge of a second piece of paper (sheet "B"), measuring 5 inches from top to bottom. On the upper $1\frac{3}{4}$ inches of sheet "B"

was written the following: ''I will to Helen—Gorge—Willbur —Maurece—the sum of 2000.00 each. I will to Margret all my stocks and bonds to have and to hold.'' The remainder of sheet ''B'' was blank, but immediately below the quoted writing the third piece of paper (sheet ''C''), measuring $2\frac{1}{4}$ inches from top to bottom, was attached by a strip of tape at its upper edge. It contained this language: ''I hereby appoint my niece Margaret C. Young as the executrix of this my last will, and direct that she act without bond or compensation, and hereby revoke all former wills by me made. Augusta C. Callahan.''

The following matters were stipulated to by the parties: The date, signature and writing on the three sheets were wholly in the handwriting of the decedent; sheets ''A'' and ''C'' were written at the same time; sheet ''B'' was written more than five years after July 7, 1950; the offered document was found by Margaret C. Young on or about April 9, 1960, in a locked metal box in an unsealed envelope, which envelope contained on the outside thereof the words ''The Will of Augusta C. Callahan''; on or about the same date the decedent was removed from her apartment to hospital and sanitarium care; Margaret C. Young was thereafter appointed the guardian of the decedent; the offered document remained under the custody and control of Margaret C. Young from on or about April 9, 1960, to the death of decedent on December 20, 1962; that on or before July 7, 1950, decedent declared that she intended to make a will; thereafter she did not make any statement concerning the making or altering of a will.

Margaret, George, Wilbur, Maurice and Helen are children of a deceased brother.

A sister and another niece of decedent were not named in the proposed will. There were no other heirs.

The document was admitted to probate on January 18, 1963. A contest was filed by the omitted heirs alleging the invalidity of the offered document, fraud and undue influence on the part of Margaret Young.

It may be taken as a fact that sheets ''A'' and ''C'' had been parts of the same will, which may be referred to as the original will and may have been written on one or more separate sheets; if the incompleted sentence on sheet ''A'' was a simple residuary clause in favor of one person, it is more likely that the original will was on a single sheet of paper.

The question of the validity of the document as a will was presented to the court as a separate issue; the other issues

being reserved pending a determination of the first issue. Based upon an examination of the offered document and the stipulation of the parties as to the facts hereinbefore set forth, the court made its order revoking probate.

The court did not make any specific finding that the will of July 7, 1950, had been torn, defaced or destroyed with the intent and for the purpose of revoking it in whole or in part.

Nor is there any finding that a person other than decedent cut out a part of that will and replaced that part with sheet "B," or pasted sheets "A," "B" and "C" together.

Nor is there a finding on whether decedent, if it were she who excised a part of the original will and replaced such excised part with sheet "B" by pasting the three pieces together, intended thereby to integrate sheet "B" as a part of her will.

The finding that the proposed instrument is not the last will and testament of decedent, while sufficient as a finding to meet the requirements of section 632, Code of Civil Procedure, and section 1221, Probate Code (*Estate of Exterstein*, 2 Cal.2d 13, 15-16 [38 P.2d 151]; *Estate of Janes*, 18 Cal.2d 512, 514 [116 P.2d 438]), has the effect of a conclusion that upon the facts stipulated and the physical appearance and content of the document and such inferences as might reasonably be drawn therefrom it was not as a matter of law a valid testamentary document.

Contestants contend that the offered document does not meet the requirements of a valid holographic will and that the document was revoked as a matter of law prior to decedent's death.

Contestants argue that there is no indication that the decedent herself taped these pieces of paper together; that there is a great possibility that the decedent wrote other documents testamentary in form and that someone other than the testatrix cut sections out of another document, picked a section that was favorable to that person or that person's friend or relative, and cut the sections out of the instant document that were unfavorable and then merely pasted them together; that to admit the writings in the instant case to probate as the last will of the decedent would be to open the door to fraud; and that the writings are not continuous.

■ We are not, of course, concerned with the construction of the terms of a will, except to determine whether the writing is testamentary in character and whether there appears from it the intent of decedent to make it her last will. To the solution of such problems there has been extended to will con-

tests the rule that an appellate court is not bound by a construction of a document based solely upon the terms of the written instrument without the aid of extrinsic evidence, where there is no conflict in the evidence (*Western Coal & Mining Co.* v. *Jones,* 27 Cal.2d 819, 827 [167 P.2d 719, 164 A.L.R. 685]; *Moore* v. *Wood,* 26 Cal.2d 621, 630 [160 P.2d 772]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) Therefore the validity of the holographic instrument must be determined entirely by reference to the applicable statutes and principles of law. (*Estate of Wunderle,* 30 Cal.2d 274, 280 [181 P.2d 874].) See also *Estate of Moody,* 118 Cal.App. 2d 300, 305 [257 P.2d 709]; *Estate of McCarty,* 211 Cal.App. 2d 23, 26 [27 Cal.Rptr. 94].)

Some of the decisions declare that in a will contest after probate the document having once been admitted to probate stands before the court as *prima facie* valid. (*Estate of Williams,* 198 Cal.App.2d 238, 240 [17 Cal.Rptr. 716, 89 A.L.R. 2d 1194]; *Estate of Goddard,* 164 Cal.App.2d 152, 157 [330 P.2d 399]; *Estate of Turner,* 181 Cal. 467 [185 P. 171]; *Estate of Baird,* 176 Cal. 381, 383-384 [168 P. 561].) The doctrine has been rejected in *Estate of Nelson,* 191 Cal. 280, 286 [216 P. 368]. *Estate of Holloway,* 195 Cal. 711, 737 [235 P. 1012], sometimes cited as supporting the doctrine, does not do so. The decision in the present case need not depend upon the correctness of the quoted doctrine.

Since sheet "B" was not in existence at the time of the original will, it was not incorporated by reference. If it became a part of decedent's will, it did so under the rule of integration. (*Estate of Dumas,* 34 Cal.2d 406, 411 [210 P.2d 697].)

A holographic will may consist of writing on several sheets of paper, one of which, executed as a will in the manner required by section 53, Probate Code, was completed at a date earlier than the other sheet or sheets, if the intention of the testator was to integrate the writings of later creation with the original will and to adopt the date and signature thereof. (*Estate of Dumas, supra,* 34 Cal.2d 406; *Estate of Finkler,* 3 Cal.2d 584 [46 P.2d 149]; *Estate of Cuneo,* 60 Cal.2d 196, 201 [32 Cal.Rptr. 409, 384 P.2d 1].)

In *Dumas,* three sheets were admitted as the will, the second and third of which were written nine years after the first; the first might have stood as a duly executed holographic will; the second sheet had neither date nor signature; the third was undated but bore a signature.

In *Finkler*, matters interlined in a validly executed holographic will on a date subsequent to the date of execution of the will were held to be a part of the will, without there having been a redating or resigning.

The question seems to be one of the intention of the decedent to integrate sheet "B" into her will of July 7, 1950. (*Estate of McCarty, supra,* 211 Cal.App.2d 23, 28-29.)

In *McCarty*, a separate unsigned but dated sheet was held to have been integrated with a holographic signature and date that had been superimposed upon the body of a witnessed will, so as to become a codicil to that will.

 Where a document offered as a will is written on several different pieces of paper and at different times, the execution of the document by signing and dating to meet the requirements of section 53, Probate Code, need not be on the sheet last written. (*Estate of Dumas, supra,* 34 Cal.2d 406.)

 To integrate a writing of more recent date as a part of a testamentary document of an earlier date, the earlier dated document must be extant as a valid will at the time of the attempted integration, unless there is at the time of the attempted integration a new execution sufficient under the statute.

If the will dated July 7, 1950, of which sheets "A" and "C" were parts, was mutilated by the testatrix with the intention to revoke the will in whole, a valid integration could not have taken place by inserting sheet "B" between sheets "A" and "C" without a new execution.

 The mere fact that one sheet of a holographic instrument has been torn into two pieces does not of itself make the holographic will invalid nor render the torn sheet ineffective as a part of the will. (*Estate of Johnston,* 64 Cal.App. 197, 199, 202 [221 P. 382]; hearing denied by the Supreme Court.)

We are of opinion that the physical integration by a testatrix of a dispositive holographic writing into a holographic will of earlier date by pasting the two or more papers together to form a coherent whole evidences an intention to make the later writing a part of the will.

A part of a will may be revoked by cancellation upon its face. (*Estate of Martens,* 10 Cal.2d 395, 397 [74 P.2d 238]; *Estate of Wikman,* 148 Cal. 642 [84 P. 212].) Under that interpretation of section 74, Probate Code, a part of a will may be revoked by tearing, defacing or destroying that section. The destruction of a part of a will by tearing, when

done with the intent and for the purpose of revoking the part so torn, will not result in the revocation of the remainder of the will. (*Estate of Streeton,* 183 Cal. 284, 291 [191 P. 16].)

If a signature has been destroyed but later restored, it then appears affirmatively that there was no intent to revoke. (*Estate of Streeton, supra,* 183 Cal. 284, 291.)

An intent to revoke the whole will cannot be inferred from a partial mutilation which does not affect the instrument as an entirety, or destroy that part which gives effect to the whole. (*Estate of Streeton, supra,* 183 Cal. 284, 291.) (See also *Estate of Hewitt,* 63 Cal.App. 440 [218 P. 778], where a witnessed nonholographic will was in question.[1])

In contending that there was a revocation by mutilation or by the making of a codicil to the will, the alleged codicil being sheet ''B,'' contestant can only be speaking of revocation of the original document dated July 7, 1950. However, the first mention of a claim of revocation is in the joint pretrial statement which sets forth contestants' contention: ''that the decedent revoked the said Will prior to her death''; and which states as an issue: ''Did the decedent revoke the said Will prior to her death?'' From the context, the pretrial statement is referring to ''the document admitted to probate.''

There is nothing from which it might be inferred that the proffered document, if it had the status of a will, was ever revoked after its having been put together in its present structure.

Our discussion then will be as to whether the original will was revoked by the separation of sheets ''A'' and ''C'' by cutting, thereby removing a part of the original will; or by the substitution of sheet ''B'' for the part removed and considered as a codicil.

Contestants have the burden of proof as to revocation. They state, however, that it is not known whether decedent or another did the cutting; they suggest that another may have done it without authorization by decedent. It would be a revocation, given the necessary intention, only if done by

---

[1] ''When discovered it showed signs of mutilation, the signatures had apparently been cut away from the first three pages, and the clause naming executrices had been cut away from the third page. The pieces containing this clause and the three signatures were missing, but the attesting signature and the attestation clause with the signatures of the witnesses on the last page had been carefully preserved and attached in the proper place and folded in with the rest of the instrument.'' *Estate of Hewitt, supra,* 63 Cal. App. 440, 443.)

decedent or another under her authorization. The stipulation is that the offered document was contained in an unsealed envelope found in a locked metal box in decedent's apartment on or about the date she was removed to hospital. The inference is that any changes and alterations were made by the testatrix when the envelope and contents were in her possession and control until her last illness. (*Estate of Stickney*, 101 Cal.App.2d 572, 575 [225 P.2d 649].) At the same time, the stipulated facts negate that the cutting was done by decedent with the intention of revoking the whole of the original will.

The decedent, by cutting out the middle portion of the will of July 7, 1950, did not mutilate it with the intention of revoking the will. The very fact that she preserved the dated first part and the signed third part, that she used them as a framework within which she inserted the new provisions written on sheet "B," proves that she intended not to revoke, but to amend, the will of July 7, 1950, by physically excising a part of it and replacing the excised part with the new provisions found on sheet "B."

Had she, instead of cutting or tearing out the middle portion, cancelled it with ink, it would be evident that it was her intention to revoke only the matter stricken out. In that case, had she interlined on the original will what she wrote on sheet "B," her intention to integrate such writing would be recognized and given effect.

The code section permits partial revocation by tearing or mutilating; the law permits integration into a partially revoked holographic will of new holographic material subsequently written on a separate sheet or upon the face of the original. Such separate sheet may be physically joined to the original will from which a revoked portion has been cut away.

A codicil may have the effect of revoking those portions of a will with which the terms of the codicil are wholly inconsistent; in that respect a codicil does not differ from a will later in date. Both have the power of revocation only under sections 72, 73 or 74, Probate Code.

Sheet "B" was not executed independently so as to stand on its own base. If it be considered a codicil, it can be given effect as such only as the result of integration with the executed original will and by virtue of the execution of the original. It could hardly serve to bring about the death of the very instrument upon whose continued existence its own viability depends.

There remains the question whether the interrupted sentence with which sheet ''A'' ends has significance to deprive the document of its testamentary character and effect. ▮▮▮ Continuity of the thought is important in determining whether physically disconnected writings form part of one whole or have been integrated one with another. There has not been an integration of a separate dispositive writing that is not itself a will or codicil if it is not actually attached to the will and does not by its contents disclose that it was intended to be a part of the will. (*Estate of Fritz,* 102 Cal.App.2d 385, 389 [227 P.2d 539].) Here, sheet ''B'' is physically attached to and integrated into the will.

▮▮▮ Moreover, it is a gratuitous assumption that the language of sheet ''B'' was not intended to be a continuation of the incomplete sentence with which sheet ''A'' ends. It is possible that sheet ''B'' disposes of all of the residue of the estate.

It is true, as argued by contestants, that an unauthorized person might assemble a document such as that under consideration here from scraps of mutilated and discarded writings. ''Whether sheets of paper or leaves have been substituted or added, must depend upon proof of facts and circumstances, and the countenance and appearance of the paper, and the character of the chirography, and is in fact a question of fraud . . .'' (*Ginder* v. *Farnum,* 10 Pa. 98, 100.) We should not presume fraud; the presumption of innocence applies in a will contest. (*Estate of Nelson, supra,* 191 Cal. 280, 284-285.) ''In determining whether or not papers prima facie testamentary in character should be admitted to probate, we should not proceed on the assumption that a crime has been committed. Chief Justice Gibson said in Wikoff's Appeal, *supra:*\* 'The presumption of innocence is favored by the law, . . . it would be criminal in a stranger to filch and suppress a part of a will . . . .' Nor should courts decline to accept such papers as testamentary because their physical relationship is such that fraudulent substitution might have been possible. In will cases fraud is almost always possible. Each case must be decided on its own facts.'' (*In re Covington's Estate,* 348 Pa. 1 [33 A.2d 235, 239].)

Since the parties, by their stipulation, have rested the determination of the legal sufficiency of the document offered for probate as a will upon the facts contained in their stipulation, that issue need not be retried.

---

\*3 Pa. 281 [53 Am.Dec. 597].

The order appealed from is reversed, with directions to the trial court to enter a finding in favor of the proponents of the will as being legally sufficient in its execution, form and content as a will, and to try the remaining issues.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 26, 1965, and respondents' petition for a hearing by the Supreme Court was denied December 22, 1965.