[No. B021850. Second Dist., Div. Three. June 30, 1987.]

Estate of EARL H. ARCHER, Deceased.
DONALD BELCHER et al., Petitioners and Respondents, v.
BERENICE E. MOISES, Contestant and Appellant.

COUNSEL

Dambach & Dambach and James J. Dambach for Contestant and Appellant.

Dickinson Thatcher, in pro. per., and for Petitioners and Respondents.

OPINION

LUI, J.—Appellant Berenice Moises filed a will contest challenging the validity of an addition to a holographic codicil to the will of her uncle, Earl Archer. Archer's cousin, Donald Belcher, and Belcher's nominee to administer Archer's estate, Dickinson Thatcher (respondents), filed a general demurrer to the contest. After a hearing, the demurrer was sustained without leave to amend, the contest was dismissed, and the challenged codicil was admitted to probate. Moises appeals.

We conclude that, as a matter of law, the addition to the codicil adopts the signature of the original codicil. Therefore, the trial court properly sustained the demurrer without leave to amend as to the allegation that the additional codicil was invalid because it was unsigned.

Further, the allegation that Archer lacked testamentary intent when he wrote the addition is a conclusion which does not withstand a demurrer. However, this defect could possibly be cured by pleading the appropriate ultimate facts. Therefore, the court erred by sustaining the demurrer without leave to amend as to this allegation.

FACTUAL AND PROCEDURAL BACKGROUND

Earl Archer died in Los Angeles in 1986, leaving a formally attested typewritten will dated December 29, 1966, and a holographic codicil dated August 18, 1971.

The 1966 will contained numerous specific bequests, including a bequest of $1,000 to appellant. The will also provided: "All of the remainder of said residue shall be distributed equally among my heirs at law and the heirs at law of my wife ... as determined in accordance with the laws of the [S]tate of California relating to the succession of separate property then in effect."

The 1971 codicil is handwritten on two sides of a single sheet of paper. The first side is dated at the top and signed at the bottom by Archer and two witnesses; it modifies a bequest made in the 1966 will and names a new executor. The second side, which is undated and unsigned, states: "Also, I decree that providing there is any estate left after all provisions have been made, that this entire balance be given to Donald Belcher my Cousin, of East Wallingford, Vermont instead of being divided between all legatees."[1] Following these words is a line approximately eleven-sixteenths of an inch long.

The executor named in the 1971 codicil did not survive Archer. Two petitions were filed requesting appointment as administrator and admission of the will and the codicil to probate; one petition was filed by Joseph Biafora, nominee of Archer's niece, Berenice Moises (appellant), and the other was filed by Dickinson Thatcher, nominee of Archer's cousin, Donald Belcher.

Before the hearing on the petitions, appellant filed a will contest, alleging that she was Archer's sole heir at law, and naming as respondents Dickinson Thatcher, Donald Belcher, and Joseph Biafora. She requested that the court deny probate of the back of the codicil, which she referred to as the "second codicil," alleging that it was not intended by the decedent to be a testamentary document, and that it does not comply with Probate Code section 6111 because it is not executed by the decedent.

Thatcher and Belcher filed a general demurrer, alleging that the contest failed to state facts sufficient to constitute a cause of action.

After a hearing, the trial court sustained the demurrer without leave to amend. In its order dismissing the will contest and admitting the 1966 will and both sides of the 1971 codicil to probate, the court stated, "It is clear from a reading of the instrument that (a) the intent of the testator was to make the physically integrated holographic instrument his Codicil, (b) the

---

[1]The witnesses to the codicil stated in declarations filed with the court that there was (or almost certainly was) no writing on the back of the document when they signed.

An exact copy of both sides of the codicil is attached as an appendix to this opinion.

instrument bore his signature as a token of execution and that the *paper* upon which the Codicil was written was meant to set forth his testamentary wishes and (c) the instrument bore a date. All three statutory requirements were satisfied. The location of the signature is immaterial. The signature need not follow chronologically the text."

Appellant filed a timely notice of appeal.

## CONTENTIONS ON APPEAL

Appellant's contentions may be summarized as follows:

1. The trial court erred as a matter of law by sustaining the demurrer.

(a) Appellant's contest alleged that the "second codicil" failed to comply with the statutory requirement of execution; this allegation is true as a matter of law.

(b) Appellant's contest alleged that the "second codicil" was not intended by the decedent to be a testamentary document; this is an allegation of fact, the truth of which, for purposes of ruling on a demurrer, is admitted.

2. The trial court abused its discretion by not granting leave to amend; "appellant was deprived of an opportunity to produce evidence concerning the testator's intentions ...."

## DISCUSSION

I. *An Addition to a Holographic Codicil Adopts the Signature of the Original Codicil*

Appellant contends that: (1) Although the "first codicil" is in Archer's handwriting, it is a formal will, *not* a *holographic* will, because it is witnessed; (2) the "second codicil," which is unsigned, cannot adopt the signature of the "first codicil" because the doctrines of "incorporation by reference" and "integration," if they still exist in California law, apply only to holographic documents; (3) even if incorporation and integration apply to these codicils, they cannot be used to supply a testator's missing signature; (4) therefore, the second codicil is invalid.

Appellant's conclusion is erroneous for two reasons. First, appellant provides no support for the contention that a witnessed will cannot be a holographic will, other than his attorney's bare assertion at oral argument that

the Law Revision Commission's comments on the 1983 revisions to the Probate Code compel this conclusion.

In 1983, the Probate Code provision on holographic wills, section 53, was replaced by section 6111.[2] Subdivision (a) of the new section, modeled after section 2-503 of the Uniform Probate Code, provides: "A will that does not comply with Section 6110 [pertaining to formal wills] is valid as a holographic will, *whether or not witnessed,* if the signature and the material provisions are in the handwriting of the testator."[3] (Italics added.)

The Law Revision Commission recommendations issued in support of the 1983 changes to prior section 53 explain that the purpose of the new language in subdivision (a) is to prevent the invalidation of handwritten wills with nonessential provisions that are not in the testator's handwriting—such as a printed date, or a letterhead. (See Recommendation Relating to Holographic and Nuncupative Wills (Nov. 1981) 16 Cal. Law Revision Com. Rep. (1982) pp. 307-308; Tent. Recommendation Relating to Wills and Intestate Succession (Nov. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 2395.) Nowhere in the commission's recommendations is there any indication that the new subdivision in any other way changes prior law.

█ We therefore conclude that the words "whether or not witnessed" in section 6111, subdivision (a), mean exactly what they say, and that the longstanding rule continues to apply to post-1984 cases: "[T]he presence of the signatures of witnesses will not invalidate an otherwise effective holographic will." (*Estate of Baker* (1963) 59 Cal.2d 680, 685 [31 Cal.Rptr. 33, 381 P.2d 913].)

█ A more fundamental error in appellant's analysis is the assumption that the *only* way to integrate the words from the front of a document with the words on the back is by formal "integration" or "incorporation by reference." Beginning with this assumption, appellant contends at length that these doctrines cannot be used to supply a testator's missing signature.

█ These arguments ignore the fact that integration and incorporation apply only to *separate writings* with some requirement missing. (See 7 Wit-

---

[2] Hereafter, all statutory references are to the Probate Code.

Section 53 provided: "A holographic will is one that is *entirely written, dated and signed by the hand of the testator* himself. It is subject to no other form, and need not be witnessed. . . ." (Italics added.) Section 6111 became operative January 1, 1985.

[3] As used in the Probate Code, the term "will" includes "codicil." (§ 88.)

Subdivision (b) of the new section clarifies the law regarding undated holographs, and is not relevant to the issue in this case.

kin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 140, p. 5656 [" '[I]ntegration' occurs where, in accordance with the testator's intention, *two or more separate writings* are admitted to probate as a single testamentary document" (italics added)]; 7 Witkin, *op. cit., supra,* § 143, p. 5660 ["A will may incorporate by reference *any extrinsic documents or papers* in existence at the time of execution of the will" (italics in original)].)

Here, the fact that the provision on the back of Archer's codicil may have been added after the provisions on the front does not transform the added provision into a separate writing. ■■■■ This conclusion is supported both by common sense and by two longstanding rules of probate law: (1) A holographic will which appears to be a complete testamentary document is valid although signed elsewhere than at the end (*Estate of Bloch* (1952) 39 Cal.2d 570, 574 [248 P.2d 21]); (2) additions or alterations to a holographic will made after the date on which it was signed, when made in the testator's handwriting with testamentary intent, operate to adopt the old date and signature (*Estate of Dumas* (1949) 34 Cal.2d 406, 411 [210 P.2d 697]; *Estate of Phippen* (1965) 238 Cal.App.2d 241, 248 [47 Cal.Rptr. 648]; *Estate of McCarty* (1962) 211 Cal.App.2d 23, 28 [27 Cal.Rptr. 94]; *Estate of Williams* (1961) 198 Cal.App.2d 238, 241 [17 Cal.Rptr. 716, 89 A.L.R.2d 1194]).

■■■■ Thus the additional provision on the back of Archer's signed and dated holographic codicil adopts the date and signature on the front, as a matter of law, whether or not integration and incorporation by reference are applicable.

II. *Appellant Should Be Allowed to Amend Her Pleading as to the Allegation of Lack of Testamentary Intent*

■■■■ " 'No particular words are necessary to show a testamentary intent but it must satisfactorily appear from the document offered as the last will and testament that the decedent intended, by the very paper itself, to make a disposition of his property after his death in favor of the party claiming thereunder.' " (*Estate of French* (1964) 225 Cal.App.2d 9, 15 [36 Cal.Rptr. 908], quoting *Estate of Wunderle* (1947) 30 Cal.2d 274, 280-281 [181 P.2d 874].)

■■■■ In this case, the disputed codicil provides: "Also, I decree that providing there is any estate left after all provisions have been made, that this entire balance be given to Donald Belcher my Cousin, . . . instead of being divided between all legatees." The words "I decree that . . . this entire balance be given" indicate that Archer intended to make a *disposition of his*

*property.* The fact that this was to be done *after Archer's death* is signified by the use of the word "legatees," as well as the word "Also," which connects this page with the preceding page, where Archer stated: "The following items to be added as a codicil to my last will and testament." Thus, the words of the codicil strongly suggest testamentary intent.

However, appellant contends that, because a demurrer admits the truth of the facts alleged in the pleadings, her allegation that Archer lacked testamentary intent when he wrote the "second codicil" has been admitted as true, and the demurrer should therefore have been overruled.

█ A petition contesting a will, like a complaint, must allege ultimate facts, not conclusions of law. (See *Estate of Bixler* (1924) 194 Cal. 585, 589-594 [229 P. 704]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 396, p. 5854.) Although the distinction between ultimate facts and conclusions of law has no fixed definition, a useful test asks whether the pleading as a whole apprises the adversary of the factual basis of the claim. (See *Semole* v. *Sansoucie* (1972) 28 Cal.App.3d 714, 718-721 [104 Cal.Rptr. 897]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 332, pp. 381-383.)

In this case, appellant's allegation that Archer lacked testamentary intent—failing to suggest any ambiguity in the language of the codicil and alleging no facts or circumstances which might contradict the plain meaning of the words—obviously does not meet this test. Therefore, the truth of the allegation was not admitted by the demurrer. (See *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

However, it is possible that this defect could be cured by pleading the appropriate facts.[4] Therefore, the court erred by sustaining the demurrer without leave to amend. (See *Eustace* v. *Dechter* (1938) 28 Cal.App.2d 706, 711 [83 P.2d 523]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 942, p. 377.)

## DISPOSITION

The judgment of dismissal is reversed. The matter is remanded, with directions for the trial court to grant appellant leave to amend the com-

---

[4] As appellant's attorney noted in an example during oral argument, a sample will written by a law student for a class assignment may contain words which appear to reflect testamentary intent. Under these circumstances, however, they do not.

plaint as to the allegation regarding testamentary intent within such time as the trial court shall fix.

Each party shall bear its own costs on appeal.

Klein, P. J., and Danielson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 16, 1987.

APPENDIX

Aug. 18, 1971

The following items to be added as a codicil to my last will and testament.

I here by revoke item 9 on page 2 regarding the bequest to John S Cameron of Mill Valley, Calif. and in its place decree that the sum of $1,000 to John S Cameron if he survive me. Otherwise this legacy shall lapse.

Likewise the sum of $1,000 to Virginia Cameron of Mill Valley, Calif. should she survive me. if not this sum be divided between her two daughters Mrs. Douglas Shimmin and Mrs. Lee Rosevear of Mill Valley, Calif.

If this has been already done and recorded I revoke the appointment of the California Bank to act as Executor of this will and my Estate and instead appoint. Richard Spiller of Northridge. to act in this Capacity.

witnesses Earl N. Archer

Mrs John H. Dimlas

~~Gregory Krulias~~ ;

Also, I decree that providing there is any estate left after all provisions have been made, that this entire balance be given to Donald Belcher my Cousin, of East Wallingford, Vermont instead of being divided between all legatees.